H. K. Carney, Jr., and Ida Mai *v.* Mamie Cook, Administratrix.

(*Nashville.* December Term, 1928.)

Opinion filed February 9, 1929.

J. E. TRAVIS and W. M. FUQUA, for plaintiff in error.

SETH M. WALKER and JOHN J. HOOKER, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This suit was instituted by the defendant in error to recover damages for the wrongful killing of her thirteen year old son, Thomas Nall Heard. The jury returned a verdict in her favor for $7500. The Court of Appeals reversed the judgment of the trial court, on account of an error in his charge, and remanded the case for a new trial.

Both the plaintiffs in error and the defendant in error filed petitions for writs of *certiorari,* which have been heretofore granted, and the case has been argued by counsel at the bar of this court.

The plaintiffs in error contend that there is no evidence to sustain the verdict, and that the contributory negligence of the deceased was such as to bar a recovery.

The deceased, Thomas Nall Heard, was killed by an automobile driven by H. K. Carney, Jr., a young man twenty-one years of age, and owned by his mother, Ida Mai Carney.

The accident occurred on Gallatin Avenue in the City of Nashville, near the point where Mansfield Avenue enters same from the west.

Two schools are located near the place where the accident occurred. Young Carney had lived for some years in that section of the City, was familiar with the situation in that vicinity, and knew that many children attended these schools. The accident occurred about 8:30 o'clock in the morning and at a time when children were on the sidewalks and crossing Gallatin Avenue to attend school. There is evidence that Carney saw some of these children and blew his horn for them when within 200 feet of the place of the accident. Young Heard lived on Mansfield Avenue, and had walked east from his home to Gallatin Avenue, and partly crossed same, being 23 feet east of the west curb, when he collided with the Carney car.

There is evidence that young Heard had stopped just before the accident to let some northbound cars pass when Carney steered his car, which was going south, from the right-hand side of the road to the left, in an attempt to run around or in front of Heard, when the collision occurred.

It is the contention of plaintiffs in error that Heard walked into the Carney car as it passed.

It is not unlikely that Heard, in his confusion, or without knowledge that the car was coming in front of him, did this.

We do not consider a determination of this question particularly important.

The evidence indicates that Carney was operating his car at from twenty-five to forty miles per hour, while the maximum speed authorized by ordinance is twenty miles per hour.

There is evidence that the Carney car ran 140 feet before it was stopped; also that Carney saw Heard some-

time before the collision. Carney was driving the car on a mission for his mother.

*(1)* In these circumstances, the question of negligence was one for the jury. It is our opinion, however, that the accident was due to the excessive speed at which the car was being operated, and the failure of Carney to have his car under proper control. Driving an automobile at such a speed as the record indicates Carney was going, in a known school zone and at a time when children are crossing the avenue, constitutes gross negligence. Young Heard had as much right to use the street as Carney did. There was nothing to have kept Carney from seeing him, and we are satisfied he did see him, and the approximate cause of the injury was the failure of Carney to have his car under such control as to have enabled him to bring it to a stop when Heard appeared in the street.

This case, upon the theory of defendant in error, resembles that of *Townsley* v. *Yellow Cab. Co.*, 145 Tenn., 94, in which it was said:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precaution accordingly."

Our conclusion is that the evidence is sufficient to sustain the verdict of the jury.

With respect to the alleged erroneous charge of the trial court, for which the Court of Appeals reversed the case, it is proper to state that young Heard died two hours after the accident, the evidence showing that he never regained consciousness.

The court, in his charge, said:

"If you find for the plaintiff you should go further and assess the damages. In doing this you will take into consideration the nature and extent of the injuries, *the amount of mental and physical pain suffered on account of same.* You will also take into consideration the pecuniary value of the life of the deceased based upon his habits, age, condition of health, and after weighing all of these elements you should assess such damages as would be reasonably sufficient to compensate for the loss of such a life." (The italics are ours.)

The contention is made that since young Heard was unconscious from the time he was injured until he died he suffered no mental and physical pain; that the court, by instructing the jury to consider this element, misled the jury, and that it is impossible to determine how much of the verdict was to compensate for mental and physical pain.

The Court of Appeals found that this was in all probability an inadvertence upon the part of the trial court. The Court of Appeals reversed the case, however, upon the authority of *Chamberlain and McAlister, Receivers,* v. *Vaughn,* 7 Higgins, 36, in which the court said:

"By the thirteenth and last assignment of error it is insisted that the Court erred in submitting to the jury the mental and physical suffering of the deceased as elements of damage in his instructions to the jury upon the question of damages, because the evidence fails to disclose that the deceased suffered any physical or mental pain on account of his injuries.

"We think, in view of the evidence, that these elements of damage should not have been charged upon or submitted to the jury by the Court."

In that case a petition for writ of *certiorari* was denied by this court. While that case was decided after the passage of chapter 32 of the Acts of 1911, no reference was made thereto.

It was further held in that case that the trial court committed error in not giving a certain special request in his charge, and most likely it was for this error that the writ of *certiorari* was denied by this court.

Subsequently, in *Railroad Co.* v. *Johnson,* 7 Higgins, 471, the Court of Civil Appeals held that a refusal to instruct the jury as requested that "if Johnson died instantly there could be no recovery for pain or suffering" was error, but not such error as would justify a reversal. A writ of *certiorari* was likewise denied by this court in that case.

While a case involving this exact question has not been passed upon by this court, subsequent to the enactment of the Act of 1911, a case involving the same principle has been before us, and was decided contrary to the contention of plaintiffs in error. We refer to the case of *Tenn. Central Ry. Co.* v. *Umenstetter,* 155 Tenn., 235, in which case the trial court charged the jury with respect to liability for common-law negligence where there was no evidence to support such a charge. In the opinion in that case this court said:

"In *Chattanooga Rapid Transit Co.* v. *Walton,* 105 Tenn., 415, *Railroad Co.* v. *Satterwhite,* 112 Tenn., 185, and *Railroad* v. *Crews,* 118 Tenn., 52, the court noted the impropriety of instructing a jury upon assumed facts to which no evidence applied.

"All of these cases, however, were decided prior to the enactment of Chapter 32 of the Acts of 1911. That Act is as follows:

" 'That no verdict or judgment shall be set aside or new trial granted by any of the Appellate Courts of this State, in any civil or criminal cause, on the ground of error in the charge of the judge to the jury, or on account of the improper admission or rejection of evidence, or for error in acting on any pleading, demurrer, or indictment, or for any error in any procedure in the cause, unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has effected the results of the trial.'

"Keeping in mind the provisions of the Statute just quoted it would have to appear to us affirmatively that the charge of the trial judge upon common-law negligence influenced or affected the verdict of the jury, before we would be justified in reversing the judgment below on that account. . . .

"We cannot escape the Act of 1911 in disposing of this case. We do not think a mere abstraction of the trial judge in delivering his instructions to the jury invaded any constitutional rights of the parties."

In the present case it does not affirmatively appear that the jury allowed any damages for mental and physical suffering. This court will not presume that the jury allowed such damages where the uncontroverted evidence shows there was no mental or physical pain; particularly in a case like this one where the court can see that the amount allowed as compensation for such a life, measured by the present purchasing power of a dollar, is exceedingly moderate.

This is a proper case for the application of the Act of 1911, and is in keeping with the modern progress of civil procedure.

Practically a week was consumed in the trial of this case; the dockets of the trial courts are congested; this injury occurred nearly two years ago; a reversal would mean much further delay before a final judgment could be had; the probabilities are that a new trial would not result differently and justice has been done.

(2) In such circumstances, counsel engaged in a trial should aid the court by calling his attention to an abstraction or an inadvertence in delivering his instructions to the jury, and where they fail to do so, this court will not reverse unless convinced that the party complaining has prejudiced by such instruction, or that justice is about to miscarry.

For the reasons stated, the judgment of the Court of Appeals will be reversed and that of the circuit court affirmed.