RAY v. CRAIN et al.—80 S. W. (2d) 113.

Middle Section.   December 22, 1934.

Petition for Certiorari denied by Supreme Court, March 19, 1935.

604

Mercer & Johnson, of McMinnville, for appellants.
Turner & Haston, of McMinnville, for appellee.

FAW, P. J.  The bill in this case was filed in the chancery court of Warren county, on June 16, 1932, by G. W. Ray against A. M. Crain and Claude Cathcart.  All the parties are residents of Warren county.

The decree of the chancery court granted the relief sought by the complainant, and the defendants appealed to this court and have assigned errors here.

The complainant alleges in his bill that he is the owner in fee of two contiguous tracts of land—one containing ''about forty acres'' and the other containing ''ten acres more or less''—both of which tracts are situated in the First civil district of Warren county, and which tracts are described separately, by metes and bounds, in complainant's bill.

Complainant further alleges that he and his predecessors in title have been in the open, peaceable, notorious, and adverse possession of said land since its purchase over fifty years ago, receiving the rents and profits from said land and paying the taxes thereon from year to year; that, notwithstanding the complainant's ownership and his right to possession of said tracts of land, the defendants have entered upon said land of the complainant, on the west side where the call is ''running up the branch westward with Crain's line about 27 poles to a stone,'' and have taken possession of a portion of said land of complainant by erecting a fence thereon, the same being a narrow strip of land running up the branch, and the line runs with the branch and a distance of 27 poles, and, notwithstanding the fact that both deeds call for a white oak stump in the branch and running with the branch 27 poles, the defendant has attempted to take possession of complainant's land by erecting a fence thereon and cutting timber and trying to fence the same up so that complainant cannot get water out of the spring—a spring which belongs to the complainant and has always been recognized as a spring which was on his land; that, unless the defendant is restrained by an injunction of the court he will fence up said spring and interfere with complainant's right to get water out of said spring, which is located within the boundary line between complainant's land and defendants' land, the defendants' land lying on the west side of the land of complainant; that both the complainant and defendant obtained their two tracts of land from one R. H.

Mason a good many years ago, and both tracts came to them through a common source of title from the said R. H. Mason, who, having formerly owned both tracts of land, made a division line between the land of complainant and the land of the defendant and made the branch the line between the two tracts.

Complainant further alleges that the defendants are attempting to take possession of a portion of his said land and set up some kind of title or claim to the same, which complainant does not know; that defendant is committing waste upon the property of complainant by cutting timber thereon, putting a fence on complainant's land and attempting to fence complainant off from his spring, and will continue to do so, and to interfere with complainant's right to get water from said spring, unless defendant is enjoined from so doing.

After a prayer for process, etc., complainant prays that defendant's claim, or assumed claim, which he is setting up to the land of the complainant, be declared a cloud upon the title to said strip of land belonging to complainant and removed as such; that a temporary injunction issue enjoining defendant from interfering with the complainant in any manner in getting water from said spring, and that, on the hearing said injunction be made perpetual; that the line between the complainant and defendant, where the same says "beginning on a white oak stump in Crain's line and running up the branch westward with Crain's line about 27 poles to a stone," be declared the true line between the complainant and the defendant, and that said line be established with the branch, as called for in the deed, and that defendant be forever enjoined from setting up any claim, right, or title thereto; and that complainant be granted full, complete, and general relief. It is stated that "this is the first application for injunction in this cause."

A temporary injunction as prayed for in the bill was granted by fiat of the county judge of Warren county prior to the filing of the bill.

It is seen that it is, in substance and effect, alleged in the bill that complainant and defendants are the respective owners of adjoining lands, and that complainant seeks to have the boundary line between their respective lands established, and to have defendants enjoined from further trespassing upon his lands. The bill might, therefore, very properly have been treated as filed under the Public Acts of 1915, ch. 122 (carried into the Code as sections 10368, 10369), to establish a boundary line. Union Tanning Co. v. Lowe, 148 Tenn., 407, 412, 413, 255 S. W. 712.

However, in the chancery court all the parties and the chancellor treated the case as a suit in ejectment, and the propriety of so treating it has not been questioned in this court.

The defendants answered the complainant's bill on July 2, 1932, and the first four paragraphs of their answer read as follows:

"They deny that complainant is the owner of the land in controversy in this cause and they do not admit that complainant is the owner of the two tracts of land described in said bill and will require strict proof of his ownership thereof.

"Defendants deny that complainant and his predecessors in title have been in the open, peaceable, notorious and adverse possession of the land in controversy in this cause for over fifty years, receiving the rents and profits from said lands and paying the taxes thereon from year to year.

"Defendants admit that the narrow strip of land in controversy in this cause lies just North of complainant's land where the call is 'running up the branch Westward with Crain's line about 27 poles to a stone' but they deny that it is on the West side of the land claimed by complainant and they aver that it is on the North side of the land claimed by complainant. They deny that complainant is the owner of said strip of land and that they have recently entered upon the same and taken possession of the said land of complainant by erecting a fence on said land belonging to the complainant and they deny that said strip of land is the property of complainant.

"Defendants further aver that the defendant, A. M. Crain, purchased from R. H. Mason a tract of land lying North of the First tract described in complainant's bill over 22 years ago, by deed recorded in Book 38, page 377, in the Register's office of Warren County, Tennessee."

Defendants then allege in their answer, with many details of time, manner, and circumstances, that defendants have been in the adverse possession of "the narrow strip of land in controversy in this cause" and of the spring mentioned in complainant's bill, under fenced inclosure, since defendant Crain's purchase thereof (as a part of a larger tract) from R. H. Mason in the year of 1909, and the defendants plead the statutes of limitation of seven years and of twenty years as a bar to complainant's suit.

Defendants further allege that the deed under which complainant, Ray, claimed said strip of land is champertous, that is to say, that the deed to complainant under and by which he claims said strip of land was executed on the —— day of ——, 19—,. and that at that time the defendant Crain was in the adverse possession of said strip of land as aforesaid, and that such being the case, complainant's deed is void and inoperative as to said strip of land.

On February 27, 1933, the defendants, by leave of the court, amended their answer, and in said amendment they amplified and elaborated the allegations of their former answer with respect to the manner and circumstances of their claim of adverse possession, and also alleged that complainant and his predecessors in title had recognized the line claimed by the defendants as the true boundary

line between the respective lands of complainant and defendants, and that complainant is therefore estopped to claim the strip of land in controversy.

The complainant demanded a jury, which demand was granted, and issues of fact, made up by the parties under the direction of the court, were submitted to a jury, which issues (with the response of the jury to each issue) are as follows:

1. Has the complainant been in actual and adverse possession of any part of the tract of land sued for, openly, notoriously, and continuously, under any color of title, for a period of seven years or more next preceding the date of the filing of the bill? A. Yes.

2. What deed or color title he held under, if any? A. By deed.

3. Do complainant's deeds cover and include the land in controversy? A. Yes.

4. Was the defendant A. M. Crain in actual, adverse possession of the land in controversy at the time complainant's deeds were executed to him, to-wit, the first tract on April 25, 1924, and the second tract on the 23rd day of February, 1923? A. No.

5. Has the defendant Crain been in adverse possession of the land in controversy, or any part thereof, by inclosure for seven years or more prior to the filing of the bill in this case? A. No.

6. Has the defendant Cathcart, or his predecessors in title, been in adverse possession of the land in controversy, or any part thereof, by inclosure for seven years or more prior to the filing of the bill in this cause? A. No.

7. Were the defendants in actual adverse possession of the land in controversy in this cause for twenty years or more before the filing of the bill in this cause? A. No.

8. Is the complainant estopped from claiming the land in controversy, by virtue of his conduct, acts, or recognition of the line from the elm to the white oak, as the true line then claimed by the complainant, and the land claimed by the defendants? A. No.

The defendants moved for a new trial, but, after holding the motion under consideration for a time, the chancellor overruled it, and, upon the pleadings and the findings of the jury, decreed that complainant recover of defendant all of the lands set out in his bill, which lands are described in the decree as in the bill.

The chancellor then decreed as follows:

"It is further ordered, adjudged and decreed that the line between the complainant and defendants' lands set out in the bill in this cause, which is the Northwestern line of the complainant's tract, and the Southeastern line of the defendants' tracts, is as follows: The line begins at a white oak stump in or near the branch and runs with the branch 27 poles, and then on with the branch by the spring to an elm in the forks of the branch, and from said elm in the forks of the branch to the McMinnville and Short Moun-

tain road, this being the line called for in said deeds of both parties, to these tracts of land.

"It is further ordered, adjudged and decreed by the Court that said line above set out be made the true line between the lands of the complainant and the lands of defendants; and it is further ordered, adjudged and decreed that said line is established with the branch as it now is, and as the branch now runs from the white oak in the branch to the elm tree in the forks of the branch, and then on Southwardly as the line originally was to the said McMinnville and Short Mountain Road.

"It is further ordered, adjudged and decreed that the defendants are forever enjoined from setting up any claim, right or title to any portion of the complainant's lands East or Northeast of the branch above described and set out, and the said land above set out and described.

"It is further ordered and adjudged that the defendants are enjoined from interfering with the complainant in any manner, from getting water from said spring which is near the line of the complainant and defendant, and that said injunctions are now made perpetual against the defendants in this cause. It is further ordered and decreed by the Court that the defendants will pay all of the cost of this cause, for which execution may issue."

The appellants (defendants below) have filed eleven assignments of error in this court. They are numbered from one to ten, inclusive, but there are two assignments numbered four, which, we assume, was a mere clerical error. We will refer to the assignments as they are numbered by appellants, except that we will designate the second of the two assignments numbered four as "4a." We will dispose of the assignments of error in the order which seems most convenient, rather than in the order of their assignment.

The third assignment does not present a question that can be considered by this court. Through this assignment it is asserted that the evidence preponderates against the findings and verdict of the jury upon all the issues. It is too well settled to need citation of authority that the verdict of a jury upon matters of fact will not be disturbed by the appellate court, if there is any material evidence upon which the jury could base the verdict; hence it is not within the province of this court to weigh the evidence and ascertain where the preponderance lies.

The second assignment is that, "The Court was in error in not setting aside the verdict of the jury and finding of facts by said jury, as there was no evidence to support the verdict of the jury upon each one of the issues taken separately and taken as a whole."

Issues of fact in chancery, when tried by a jury demanded by either party, are tried according to the forms of a court of law, and such trials are conducted in the same manner as jury trials at

law, and the findings of the jury have the same force and effect as in a trial at law. Code, sec. 10579; Johnson v. Graves, 15 Tenn. App., 466, 475; Anderson v. Stribling, 15 Tenn. App., 267, 276.

The evidence heard by the jury in this case consists of the oral testimony of twenty-six witnesses, together with numerous documentary exhibits. It would merely extend this opinion to an unnecessary length, and would serve no useful purpose, to state herein the testimony of all these witnesses, or even the witnesses for the party successful below. Cases "tried in the Chancery Court upon oral testimony" are expressly excluded from the statutory requirement that, in cases tried on the facts in a chancery court, both the chancellor and the Court of Appeals shall "make . . . written findings of fact." Code, sec. 10620. Moreover, an assignment that there is no evidence to support the verdict of a jury, or an assignment that the trial court erred in overruling or sustaining a motion for a directed verdict, presents a question of law, and not a question of fact. Norman v. Railroad, 119 Tenn., 401, 422, 104 S. W., 1088; Mullins v. Stave & Lumber Co., 155 Tenn., 132, 135, 290 S. W., 975; Anderson v. Stribling, supra, at page 281 of 15 Tenn. App.; De Kalb County v. Tennessee Electric Power Co., 17 Tenn. App., 343, 353, 67 S. W. (2d), 555. Hence, where a petition for certiorari is filed to obtain a review of a judgment of this court in such case, the Supreme Court examines all the evidence in the record in order to ascertain whether this court reached the right conclusion upon the question of law thus presented.

We have examined all the evidence admitted to the jury, and have considered it in connection with the several issues submitted to the jury, and we find that there was ample evidence to support the findings of the jury upon each and all of the issues.

The only real controversy in the evidence was with respect to a narrow strip of land on the southeast side of a spring branch, which branch the complainant contended was the boundary line between the parties, from a white oak stump southwestward, up the branch with its meanders, to an elm tree (now gone, but which, complainant contends, formerly stood in "the forks of the branch").

On the other hand, the defendants contend that the disputed line is a straight (or substantially straight) line, about 10 poles (660 feet) long, from the white oak stump above mentioned to an elm tree standing on the south side of the branch, 16 feet, or a little more, south of the point where the complainant's proof places the elm corner.

The land in controversy is a "narrow strip" on the southeast side of the branch, lying between the branch and the "straight line" from the white oak stump to the elm. The record does not show the area of the "strip" of land in controversy, but it is evidently small—probably not more than two acres. However, it in-

cludes a "spring," and the possession and control of this spring seems to be regarded by both parties as a matter of much importance.

The effect of the findings of the jury is to fix the branch as the line, as contended by the complainant. The findings were approved by the chancellor, and, as before stated, we are of the opinion that they are supported by ample evidence. The second assignment of error is overruled.

The fourth assignment is, in substance, that the court erred in fixing and establishing the line between the lands of complainant and defendants as set forth in the decree. The decree on that point (which we have hereinbefore copied) is merely a proper sequence of the findings of the jury upon the proof, and we find no error therein.

■ ■ It is said, for the appellee, that the fourth assignment, supra, should not be considered for the reason that it was not included in the motion for a new trial below. This would be a valid objection if the assignment related to or affected the verdict of the jury; but if there had been error in the decree made subsequent to the verdict and overrulement of the motion for a new trial, an assignment of error would lie without reference to a motion for a new trial. However, in this instance the decree was not, in our opinion, erroneous in the particular mentioned in the fourth assignment of error, and that assignment is overruled.

Appellants' assignment which we have designated as 4a complains of the action of the chancellor in overruling the motion of defendants below for a directed verdict in their favor upon each and all of the issues.

It was held in the recent case (June 23, 1934) of Mutual Life Insurance Co. v. Burton, 167 Tenn., 606, 613, 72 S. W. (2d) 778, that the directed verdict has no place in chancery practice, but that it is the duty of the chancellor to withdraw from the jury an "issue" or "question" calling for a finding of fact as to which there is in the evidence no dispute or controversy.

However, the distinction between directing a verdict and withdrawing a question from the jury is unimportant on this appeal, for, as we have already held, there was ample material evidence to support complainant's case, and the assignment numbered 4a is overruled.

The fifth, sixth, seventh, eighth, and ninth assignments assert that there was error in certain specified and quoted portions of the charge of the court to the jury.

We have read the charge and have considered it with especial reference to the excerpts upon which it is sought to predicate error.

■ In construing the charges of trial courts, the appellate court must take into view the entire charge, and not merely disjointed excerpts therefrom. Trotter v. Watson, 6 Humph. 509; State v.

Cagle, 2 Humph., 414; Jackson Insurance Co. v. Sturges, 12 Heisk., 339, 343. When thus considered, we find no error in the charge in this case, and the aforesaid five assignments complaining of the charge are overruled.

■ ■ Through their tenth assignment of error, the appellants complain of the action of the chancellor in excluding from the jury certain testimony of defendant Crain which is quoted in the assignment.

In order that the point involved in this assignment may be understood, it may be stated that, in the year of 1909, R. H. Mason, the then owner, contracted to sell a tract of land to one R. H. Cooper, which tract included the "strip" in controversy and the lands contiguous thereto now belonging to complainant and defendants. Before Mason executed a deed to Cooper, the latter contracted to sell a part of the land to defendant Crain, and, at the request of Cooper and Crain, Mason made a deed to each of them for that part of the land to which he was entitled under the latter contract. Crain testified that he and Cooper were with Mason at the time Mason drew the two deeds.

In the course of Crain's testimony in chief, he was asked by his counsel if, at that time, anything was said about how the line was to run? An objection to this question was sustained, and then defendant Crain was asked by his counsel the following question:

"Now, Mr. Crain, what was said there between you and Mr. Cooper and Mr. R. H. Mason about how this line should run from the elm down to the white oak, if anything was said at all?"

Objection was again interposed, and the chancellor sent the jury out and, in the absence of the jury, defendant Crain testified to the statements quoted in the tenth assignment, which testimony the chancellor declined to admit to the jury, and which was as follows:

"Well, when he sat down to write the deed and he said 'You men know how you want to divide the land, I don't,' and Cooper spoke up and said, 'Let it run with the meanders of the branch' and I said 'you need not write me a deed at all, I wouldn't have it' and Cooper said, 'It would cut me out of water at the lower end' and I said 'You have got water on the lower end of your farm and water on the upper end of the farm and if I can't get the spring and branch you need not write me a deed at all' and he went along and wrote the deed and left the spring out and I said I would not have the deed and so he put the spring in, just wrote 'and spring,' and Mr. Cooper agreed to it.

"Was that at the time the deed was written to you? A. He was sitting there ready to start off on the deed."

As showing the ground on which the chancellor excluded the above-quoted testimony, we quote his statement made at the time, as follows:

"I don't think testimony of that character would be competent testimony to show that at the time or prior to the making of the deed certain agreements were made as to where certain lines should be if it at all contradicts the terms of the deed."

We think the exclusion of said testimony, upon the ground stated by the chancellor, is well supported by the authorities. All previous verbal arrangements are merged in a written agreement. The entire engagement of the parties, with all the conditions upon which its fulfillment can be claimed, must be conclusively presumed to be there stated. Union Mutual Insurance Co. v. Mowry, 96 U. S., 544, 24 L. Ed., 674; McGannon v. Farrell, 141 Tenn., 631, 637, 214 S. W., 432, and other cases there cited; Provident Life & Accident Insurance Co. v. Matlock, 3 Tenn. App., 432, 435. The tenth assignment of error is overruled.

This leaves for consideration only the first assignment of error, which is that "the court was in error in not setting aside the verdict of the jury and granting defendants a new trial because of the improper argument of counsel for complainant." The "argument of counsel" of which this assignment complains, together with the exceptions of counsel for defendants thereto and the rulings of the chancellor on the exceptions, appear in the bill of exceptions as follows:

"Argument. By Mr. Turner, Attorney for complainant to the jury in his closing the case for complainant:

" 'They say our deeds do not cover the land in controversy. I say they do. The deeds call for the same corners, the white oak and the elm, and of course our deeds cover the land. They tried to suppress their deed to keep it from the jury.'

"The defendants except to the improper and prejudicial remarks of Mr. Turner to the jury and ask the Court to instruct the jury not to consider the same, which exceptions are overruled by the Court and to the action of the Court in overruling defendants' exceptions defendants except.

" 'I have been practicing law a long time, I never accused a witness of swearing falsely. I say, Gentlemen of the jury, our deeds do cover the land in controversy. I have been practicing law for twenty-five years. Mr. Johnson says our deeds do not cover the land. Of course a lawyer is not crooked, you know I don't believe a lawyer is crooked. I say they did try to suppress their deed to keep it from the jury. I ask the Court to stop Mr. Johnson from interrupting me while I am speaking to the jury. I didn't interrupt him while he was speaking to the jury. I have a right to draw my own conclusions from what was done here before this jury.'

"The defendants except to the improper and prejudicial remarks of Mr. Turner to the jury and ask the Court to instruct the jury not to consider the same, which exceptions are overruled by the

Court and to the action of the Court in overruling defendants' exceptions defendants except.

" 'Gentlemen of the jury, I believe in the truth, I stand for the truth, and no man who does not stand for the truth can ever amount to anything: I say, Gentlemen of the Jury, no man ever became a great man who does not stand for the truth. I have reached the age that it does not make any difference to me whether I win a law suit or not but I do stand for the truth; I believe in doing the right thing. A lawyer owes some duties to the court and jury as well as to his clients. A client has no right to ask his lawyer to do something he ought not to do. Gentlemen of the jury there has been more crooked work done in this law suit than I ever saw in a law suit in my life. Old man Crain started out to steal this land, he forged his deed and wrote "& Sping" in it and he did not want this jury to see it and his lawyers (meaning Mr. Johnson) had it down to their office. Talk to me about reading from the record, I don't blame them from wanting to read from the record, and keep the deed hid. Gentlemen of the jury, you saw me have to pull old man Crain's deed out of them on the other side with a cork screw. I believe in standing for the truth if the whole world falls. I would suffer my right arm to be cut off before I would be a party to the crooked work that has been done in this cause. I say they tried to suppress that deed to keep it from the jury.'

"The defendants except to the improper and prejudicial remarks of Mr. Turner to the jury and ask the Court to instruct the jury not to consider the same, which exceptions are overruled by the Court and to the action of the Court in overruling defendants' exceptions defendants except."

The record shows that, at or before the beginning of the trial below, the parties, through their counsel, agreed that either party might read from the records in the register's office of Warren county any deed pertaining to the title of either party as evidence in the cause. The agreement also provided a method for putting copies of deeds thus read into the record in the event of an appeal of the case. In the course of the trial a number of deeds, including the two deeds—one from R. H. Mason and one from Lee—under which defendant Crain claimed title, were thus put in evidence.

In the course of the cross-examination of defendant Crain by complainant's counsel (Mr. Turner), an incident occurred which is disclosed by an excerpt from the record as follows:

"Q. I will ask you, in conveying that piece of land to Mr. Cathcart if you didn't keep the calls calling for the elm in the forks of the branch, known as Hamilton's corner. Didn't you convey it to him that way?

"Mr. Johnson: We except because the deed is the best evidence.

"The Court: Sustained.

"Mr. Turner:

"Q. I am trying to get the deed, I am now making a demand on these lawyers and this client for the original copies of both of these deeds, from Mason to this man and from Crain to this man over here.

"Mr. Johnson: Give us just one moment, your Honor, and we will furnish the deeds.

"The Court: All right.

"Mr. Masey: There is an agreement to read from the records.

"Mr. Turner: I can understand why they wouldn't want to exhibit their original deeds.

"(Mr. Johnson comes back with the deed.)

"Mr. Turner:

"Q. I hand you what purports to be the deed from R. H. Mason to A. M. Crain, dated November 11, 1909, signed by R. H. Mason and registered in the Register's office, Book 38, pages 377-378, and ask you if that's the deed which you took from Mr. R. H. Mason at the time you took this tract of land? A. Yes, sir.

"Q. I notice in the description down here there is a word added in, 'and spring' is written in this deed with a different ink, I will ask you when that was put in there?

"Mr. Johnson: We except for the reason that when the jury was out your Honor refused to let it go to the jury about when that went in there; we asked him that very question, in the absence of the jury, and he told your Honor what happened on that occasion.

"Mr. Turner: I asked the witness about that myself and told him that I was going to call on him for the deed; the deed shows an interlineation here and I want to show when it was made.

"Q. Was that made in there at the time the deed was executed, or later? A. It was changed before he ever turned it over to me, just as quick as he wrote it and read it and I would not accept the deed without that was put in there.

"Q. Did Robert H. Mason write that in there? A. Yes, sir.

"Q. At the time the deed was written? A. At the same time.

"Q. Can you explain why that is in different ink and in different handwriting?

"Mr. Johnson: He had better first show it is in different handwriting.

"The Court: First ask him whether or not that is in different handwriting?

"A. It is in the same handwriting. You notice there in the deed it is Wm. Crain, my brother worked for Mason years and years and he was on his mind all the time when he was writing this deed, and Mr. Mason always called me William, and wrote the deed to William and then changed it to me.

"(Here Mr. Turner shows the deed to the jury.)"

In rebuttal, the complainant examined as witnesses Clarence Walling and Frank Colville, each of whom testified that the words "& Sping" interlined in the deed from R. H. Mason to defendant Crain were not in the handwriting of R. H. Mason; that is to say; Mr. Walling testified that the words "& Sping" were not in the same handwriting as the remainder of the deed; and Mr. Colville testified likewise, and testified further that he had been in the banking business for thirty-three or thirty-four years, during which time R. H. Mason did business with his bank, that he wound up the estate of R. H. Mason, and, by reason of these facts, he was well acquainted with the handwriting of R. H. Mason and that the words "& Sping" interlined in said deed were not in R. H. Mason's handwriting, although the remainder of the deed was in Mason's handwriting. It should have been stated that Mr. Walling was, when he testified, and had been for sixteen years, cashier of a bank at McMinnville, and stated that, in that capacity, it had been a part of his duty to scrutinize signatures and handwriting.

With reference to the alleged improper argument of counsel, the chancellor (in disposing of the motion for a new trial) said:

" 'Solicitor for defendants insists that the argument of Attorney for Complainant was improper and prejudicial before the Jury.

" 'As the Court recalls the argument of Complainant's attorney relative to the part of his argument complained of was substantially as copied in defendant's motion, except on page two, line 17, from the top, I think he said, "And his lawyers had it down to their office" in substance that. I do not recall that he said his lawyers were trying to assist him in concealing it, nor do I think facts sufficient to warrant or surmise such a statement existed.

" 'I do recall that counsel for the defendant excepted to the argument of Attorney for complainant three or four times, perhaps oftener, and that the Court said, "He, the Complainant's Attorney, had a right to draw all legal deductions from the proof." The Court based this upon the fact that there was some proof of the deed having been changed by inserting the words "& Sping" therein.

" 'One of the exceptions was that there was an agreement to read all deeds from the record, to which the Court replied in substance that "This was true and that the same had been read in the presence of the jury, and that the jury knew of such an agreement and would look to that fact in arriving at their verdict."

" 'The Court did not understand from the argument of Complainant's Attorney before the Jury that he referred to or meant Mr. Johnson was trying to assist him in concealing the deed, but as I recall the argument after the statement "and his lawyers had it down to their office" Complainant's counsel said, "I don't blame them" (which could be inferred as meaning his Attorneys as well as defendant) from wanting to read from the record, and in refer-

ence to the matter he used the pronoun ''they'' more than once, and which the jury may or may not have construed as including their Attorneys as well as defendants, but the Court did not so construe it and does not think it was prejudicial. The jury heard the request by complainant's attorney for defendant Crain's deeds and heard Mr. Johnson immediately respond that the deed was at his office and ask permission to be excused and to get it, which was granted, and saw him leave immediately and return in just a few minutes with the deed, which was used by Complainant's Attorney, in the cross-examination of defendant Crain as I remember it. The deed was exhibited to the Jury and was in possession of Attorneys for both complainant and defendants for such examination thereon before the Jury as they desired.' ''

We think the jury must have understood that complainant's counsel was imputing to defendant's counsel, as well as to defendant Crain, a purpose and attempt to suppress the defendant's deeds. We do not think the extremely harsh and vituperative language used by counsel for complainant, hereinbefore quoted, was justified by the record. In numerous cases, the use of intemperate, abusive, and denunciatory language in the arguments of counsel has been condemned by the courts, and some of these cases are cited, reviewed, and approved in Watkins v. State, 140 Tenn., 1, 203 S. W., 344, and Nashville Railway & Light Co. v. Owen, 11 Tenn. App., 19. Many authorities to the same effect from other jurisdictions are cited in the brief of counsel for appellants.

Where the evidence in a case is evenly balanced, or nearly so, such improper argument of counsel may be ground for reversal; but, upon a review of the evidence in this case, we are of the opinion that the findings of the jury would not have been different, if the argument of counsel had been confined within proper limits, and we are forbidden to reverse a judgment for such an error unless, upon an examination of the entire record in the cause, it affirmatively appears that such error affected the result of the trial. Code, sec. 10654; Carney v. Cook, 158 Tenn., 333, 340, 13 S. W. (2d), 322; Lovier v. Nashville, 1 Tenn. App., 401, 409; Taylor v. Taylor, 14 Tenn. App., 101, 119. We are therefore constrained to overrule the first assignment of error.

It results that the decree of the chancellor is affirmed, and a decree will be entered accordingly.

The costs of the appeal will be adjudged against the appellants and the surety on their appeal bond.

Crownover and DeWitt, JJ., concur.