LINCOLN COUNTY BANK et al. v. MADDOX et al.—114 S. W. (2d), 821.

Middle Section. October 30, 1937.

Petition for Certiorari denied by Supreme Court, April 2, 1938.

Sam C. Tigert, of Fayetteville, for appellants.
A. E. Simms and B. E. Holman, both of Fayetteville, for appellees.

FAW, P. J. It is sought by the original bill, and by a cross-bill filed by one of the defendants to the original bill, in this case to obtain judgments against B. P. Maddox and his wife, Johnnie Maddox, and Dr. D. T. Hardin, on certain notes described in the pleadings, and to set aside, as fraudulent and void, certain conveyances

of real estate made by the defendant Dr. D. T. Hardin to and for the benefit of his wife and codefendant Mrs. Elzie Hardin.

The complainants in the original bill are the Lincoln County Bank and the Blanche Banking Company, Tennessee corporations, with their respective places of business located in Lincoln county, Tenn.; and the parties named as defendants to the original bill are B. P. Maddox and his wife, Mrs. Johnnie Maddox, D. T. Hardin and his wife, Mrs. Elzie Hardin, the Elk National Bank, a corporation organized under the laws of the United States with its principal place of business in the town of Fayetteville, Lincoln county, Tenn., John D. McDowell, receiver of the said Elk National Bank, Robert Fulton, clerk and master of the chancery court of Lincoln county, Tenn., the Union Central Life Insurance Company, an Ohio corporation, with its situs at Cincinnati in the state of Ohio, and Jesse R. Clark, trustee, a nonresident of the state of Tennessee and resident of the state of Ohio.

The Elk National Bank and its receiver, John D. McDowell, answered the original bill, and filed their answer as a cross-bill against D. T. Hardin and wife, Elzie Hardin, B. P. Maddox and his wife, Mrs. Johnnie Maddox, the Lincoln County Bank, Blanche Banking Company, and Robert Fulton, clerk and master, etc. (all of whom were parties to the original bill), and also against Mrs. Harriett D. Sheddan, a resident of Lincoln county, Tenn.

Later, the original complainants, by leave of the court, filed an amended and supplemental bill, by which they brought in as additional defendants Mrs. Harriett D. Sheddan and M. F. Childress, residents of Lincoln county, Tenn.

No answer was filed or other defense made by B. P. Maddox and wife, Johnnie Maddox, Robert Fulton, clerk and master, etc., Mrs. Harriett D. Sheddan, M. F. Childress, Union Central Life Insurance Company, and Jesse R. Clark, trustee, or either of them, to the complainants' bills or to the aforesaid cross-bill, and the cause was heard on pro confesso decrees against them, both under the complainants' bills and the cross-bill.

The original bill was filed on April 3, 1934, and it appears from allegations therein and from the proof that theretofore, to wit, on January 17, 1934, the assets of the complainant Blanche Banking Company, including the note on which complainant sues in this case, were transferred and conveyed to its cocomplainant, the Lincoln County Bank, and the Lincoln County Bank was the holder and owner of said note at the time the original and amended and supplemental bills were filed; hence the Lincoln County Bank is the real party complainant in the original and amended and supplemental bills.

It also appears from pleadings and proof that John D. McDowell was duly appointed receiver of the Elk National Bank in the month

of March, 1934, and has been in the active discharge of his duties. as such receiver since that time; hence he would be entitled, as such receiver, to any recovery which might be obtained under the aforesaid cross-bill.

The Elk National Bank and its receiver admitted, in their answers, all the material allegations of complainants' bills, and sought no relief by their cross-bill adverse to the original complainants. The case narrowed down to a contest between the Lincoln County Bank and John D. McDowell, receiver of the Elk National Bank, on one side, and Dr. D. T. Hardin and his wife, Mrs. Elzie Hardin, on the other side. The decree of the chancery court was adverse to defendants D. T. Hardin and wife, and they have appealed and assigned errors.

The pleadings are voluminous. They occupy approximately seventy-seven pages of the transcript (not including numerous documentary exhibits thereto), and consist of the following: (1) The original bill; (2) demurrer of D. T. Hardin and wife to the original bill; (3) the answer of D. T. Hardin and wife to the original bill; (4) the answer and cross-bill of Elk National Bank and John D. McDowell, its receiver; (5) the demurrer of D. T. Hardin and wife to the cross-bill; (6) the answer of the original complainants to the cross-bill; (7) an amendment to the cross-bill; (8) the amended and supplemental bill of the original complainants; (9) demurrer of D. T. Hardin and wife to the amended and supplemental bill of the original complainants; (10) demurrer of D. T. Hardin and wife to the amended cross-bill; (11) a motion of D. T. Hardin and wife to quash the attachment and dissolve the injunction granted under the original and amended and supplemental bills of the original complainants; (12) a motion of D. T. Hardin and wife to quash the attachment and dissolve the injunction granted under the cross-bill; (13) the answer of D. T. Hardin and wife to the amended and supplemental bill of the original complainants; (14) the answer of D. T. Hardin and wife to the cross-bill and amended cross-bill; (15) the answer of John D. McDowell, receiver, to the amended and supplemental bill of the original complainants; and (16) the answer of the original complainants to the amended cross-bill.

It would extend this opinion to an unreasonable length and would serve no useful purpose to recite herein the contents of each and all of the aforesaid pleadings.

The chancellor's findings of facts are incorporated in his decree, and he has therein and thereby adjudicated the material and determinative issues made by the pleadings. It is now our duty to decide whether or not the appellants, D. T. Hardin and wife, Elzie Hardin, have, by their assignments of error, pointed out any error in the decree of the chancery court.

The chancellor found that B. P. Maddox and wife, and D. T. Har-

din, are justly indebted to the Lincoln County Bank by note dated April 22, 1931, payable to the order of Blanche Banking Company four months after its date, and indorsed to the Lincoln County Bank, for the principal sum of $1,335.46, and which note provides for payment of interest and for attorney's fees of 10 per cent. if placed in the hands of an attorney for collection, and upon which note there is due and owing as of this date (September 14, 1936), of principal, interest, and attorney's fees, the total sum of $1,913.98.

The chancellor also found that B. P. Maddox and wife, and D. T. Hardin, are justly indebted to John D. McDowell, receiver of the Elk National Bank, by note dated October 2, 1933, for the principal sum of $593, less a credit of $14.86, leaving the principal sum of $578.14 due and owing, and the further sum of $99.44 interest thereon, and a reasonable attorney's fee $101.63, making the total sum of $779.21.

The chancellor thereupon adjudged and decreed that complainant, the Lincoln County Bank, recover of B. P. Maddox and wife, Johnnie Maddox, and D. T. Hardin, the sum of $1,913.98; that the cross-complainant John D. McDowell, receiver of the Elk National Bank, recover of B. P. Maddox and wife, Johnnie Maddox, and D. T. Hardin, the sum of $779.21; and that complainant, the Lincoln County Bank, and cross-complainant, John D. McDowell, receiver, etc., recover of B. P. Maddox and wife, Johnnie Maddox, and D. T. Hardin, all the costs of the cause.

The chancellor further found that the note of April 22, 1931, and the note of October 2, 1933, upon which judgments were rendered as aforesaid, were renewal notes, and did not constitute novations, but only constituted acknowledgments of previously existing indebtedness (which "previously existing indebtedness," the proof shows, originated anterior to the conveyances of D. T. Hardin hereinafter mentioned).

The chancellor further found that, on August 13, 1929, by deed acknowledged on January 20, 1930, and recorded on the latter date in the register's office of Lincoln county, Tenn., defendant D. T. Hardin gave and conveyed to his wife and codefendant, Mrs. Elzie Hardin, the real estate described in Exhibit C to the original bill in this cause (which real estate, consisting of eight tracts, aggregating approximately 180 acres, and situated in what was formerly the 18th, but now the 8th, civil district of Lincoln county, Tenn., is fully described by metes and bounds in the chancellor's decree), and that said conveyance was voluntary, without fair or valuable consideration, and fraudulent in both law and fact, and was executed with the intent to hinder and delay the complainant and cross-complainant, and others, in the collection of their debts, and that the said Elzie Hardin well knew the intent and purposes of said conveyance, and aided therein.

The chancellor further found that, by deed dated June 21, 1929, acknowledged on January 20, 1930, and registered in the register's office of Lincoln county, Tenn., in deed Book "F-5," page 574, defendant D. T. Hardin conveyed to Jesse Hardin a certain lot or parcel of land, in the town of Fayetteville, Tenn. (known in the record as the Fayetteville Collegiate Institute property and fully described in the pleadings and decree), the only consideration for such conveyance being that said Jesse Hardin would immediately reconvey said real estate to the defendants D. T. Hardin and his wife, Elzie Hardin, as tenants by the entireties; and that, by deed dated January 23, 1930, and acknowledged January 29, 1930, said Jesse Hardin conveyed said real estate to D. T. Hardin and wife, Elzie Hardin, as thus agreed; and that said conveyances were made without a fair or valuable consideration, and, as to the defendant Elzie Hardin, voluntarily, and they were fraudulent in law and fact, and were executed with the intent to hinder and delay complainant, the Lincoln County Bank, and cross-complainant, John D. McDowell, receiver, etc., and other creditors, in the collection of their debts, said Elzie Hardin well knowing the intent and purpose of the conveyances, and aiding therein, and that therefore said conveyances are fraudulent, null, and void as against complainant, the Lincoln County Bank, and cross-complainant, John D. McDowell, receiver, etc.

However, the chancellor further found that, at the time the said Fayetteville Collegiate Institute lot was purchased by D. T. Hardin in 1920, it was the intention of D. T. Hardin and his said wife to buy the lot together, but that the deed therefor had been executed to D. T. Hardin alone, and title to same had been allowed to remain in the name of D. T. Hardin approximately ten years, during which time the debts sued on in this case had been created; and the chancellor held and adjudged that "defendants D. T. Hardin and wife, Elzie Hardin are estopped to set up such claim as against the bona fide claims of creditors," except that defendants D. T. Hardin and wife "are entitled to homestead" in said Fayetteville property.

The chancellor further found that the aforesaid conveyances by D. T. Hardin "had the effect to render the defendant D. T. Hardin insolvent, and that the other defendants were likewise insolvent, and the said D. T. Hardin was left without sufficient means or property with which to pay his indebtedness, and especially the notes sued on in this cause;" and the chancellor adjudged and decreed "that said conveyances be set aside and held for naught, as being fraudulent both in law and in fact."

The chancellor thereupon ordered, adjudged, and decreed that, unless the defendants B. P. Maddox and wife, Johnnie Maddox, and D. T. Hardin, or some of them, pay into the hands of the clerk and master of the chancery court of Lincoln county, within sixty

days from the date of said decree, the amounts of the aforesaid judgments against them, the clerk and master would proceed to sell, first, the aforesaid real estate situated in the old 18th district (now the 8th district) of Lincoln county, Tenn., or so much as may be necessary to fully pay and satisfy the aforesaid judgments and all the costs of the cause—said real estate to be sold on a credit of twelve months and twenty-four months, and the clerk and master to take notes, with two or more good and approved personal sureties, and to retain a lien on the lands sold as further security for the purchase money.

The decree provided for advertisement by the clerk and master of the time, place, and terms of sale, with full and explicit directions as to the mode and manner of such advertisement.

With reference to the sale of the 8th district property (which consists of eight tracts, separately described in the deeds and in the record), the decree contained a provision as follows: "In making sales of the real estate, if the defendants D. T. Hardin and wife, Elzie Hardin, in writing file with the Clerk & Master before the day of sale, a written order directing the order in which said tracts are to be sold, the Clerk & Master will follow such order; otherwise he will sell said tracts beginning with the first tract, selling the same first and so on, until sufficient sum is realized to pay the judgments and costs here rendered against said Maddox and wife and said Hardin."

The decree also contained provisions with reference to said Fayetteville property as follows: "There being a probability that a sale of the real estate in the old 18th Civil District of Lincoln County, Tennessee, will realize more than sufficient to satisfy the decrees and costs in this cause, it is ordered that no sale of the town property be had until after the coming in of the report of sale under this decree.

"The Court also being of the opinion that the defendants D. T. Hardin, and wife, Elzie Hardin, are entitled to homestead in the real estate located at Fayetteville, Tenn., the Court here orders that no sale of the Fayetteville real estate be made until after the completion of the sale of the property in the old 18th Civil District of Lincoln County, Tennessee, the Court reserving the right to allow homestead in kind out of said town property, or if the same cannot be advantageously divided, to have the same sold, and to allot homestead out of the proceeds of sale, to be reinvested in other real estate as provided by law, the proof also not showing the exact amount owing on the mortgage indebtedness on said property in favor of Mrs. Harriet D. Sheddan, and the Court reserving the right to fix and determine all of these matters after a report of sale has been filed, of the sale of the property in the old 18th Civil

District of Lincoln County, Tennessee as herein adjudged, all matters regarding sale of said house and lot being here reserved.''

In their pleadings, defendants, D. T. Hardin and wife demanded a jury, which demand was granted by the court, and a jury was duly impaneled and sworn to try such issues of fact as might be submitted to them by the court. The proof, consisting of the oral testimony of witnesses and documentary evidence, was heard in the presence of the jury; but, at the close of all the evidence, the chancellor ruled that ''there were no matters of fact to be submitted to the jury under the proof, but that under the undisputed proof in the case the matters involved were matters of law and matters to be acted upon and decided by the Court, and discharged the jury and declined to submit any matters of fact to them for their consideration, to which action of the Court in discharging the jury and declining to submit to them any issues of fact, D. T. Hardin and wife, Elzie Hardin, excepted at the time through their counsel.''

Thereafter, upon the aforesaid evidence heard before the jury and oral arguments and briefs of counsel, the chancellor pronounced and entered the decree hereinbefore set forth.

The first assignment of error of the appellants is that the chancellor erred in discharging the jury over their objection. They contend that there were disputed issues of fact upon which they were entitled to have findings by the jury. But, before stating our rulings, upon the questions thus presented, we will dispose of two propositions advanced by appellants with respect to matters of procedure.

Appellants say that ''after dismissing the jury the Chancellor should have remanded the cause to the rules for written proof, under the statute, and not have assumed jurisdiction to decree on oral proof.''

In support of the proposition last stated, appellants cite section 10562 of the Code, which provides that, ''In all causes in chancery, except divorce causes and jury trials, the testimony of witnesses shall, unless otherwise provided, be taken in writing without compelling their personal attendance. In divorce causes and jury trials, and in suits involving demands of five hundred dollars or less, either party may examine the witnesses in open court, or take their proof by depositions as in other cases.''

It is seen that ''jury trials'' are excluded from the requirement that the testimony of witnesses shall be taken in writing, etc., and, in this state, it is the established practice in chancery cases where the proof is heard by a jury demanded by one or more of the parties, and the chancellor rules that there is no conflict in the evidence with respect to the material and determinative issues of fact made by the pleadings, and thereupon withdraws the case from the jury, it is his right and duty to render a decree in ac-

cordance with the law applicable to the undisputed evidence in the record. Among the cases which clearly recognize the propriety of such procedure are the following: Carpenter v. Wright, 158 Tenn., 289, 13 S. W. (2d), 51; Mutual Life Insurance Co. v. Burton, 167 Tenn., 606, 72 S. W. (2d), 778; Crabb v. Cole, 19 Tenn. App., 201, 209, 84 S. W. (2d), 597; Standard Life Insurance Co. v. Strong, 19 Tenn. App., 404, 409, 89 S. W. (2d), 367.

Appellants also contend that if this court "concurs with the Chancellor—that there were no issues of fact for a jury—then the case should be referred to the Supreme Court," citing Code, section 10618. The section of the Code just cited defines the jurisdiction of this court, and reserves to the Supreme Court jurisdiction of all cases "which have been finally determined in the lower court on demurrer or other method not involving a review or determination of the facts, or in which all the facts have been stipulated." It is also provided in said section that "any case removed by mistake to the wrong court shall by such court be transferred to the court having jurisdiction thereof, direct."

We understand the contention of appellants in this connection to be, in substance, that this court is without jurisdiction to review a decree of the chancery court based upon undisputed facts (because such review would involve only questions of law), and therefore this court should (if it concurs in the chancellor's view of the evidence) transfer this case to the Supreme Court.

The Court of Appeals is not without jurisdiction merely because only questions of law are involved. Creasy v. Comargo Coal Co., 154 Tenn., 372, 374, 289 S. W., 524; Cox v. Smith, 154 Tenn., 369, 370, 289 S. W., 524.

As between the Supreme Court and Court of Appeals, the jurisdiction on appeal turns on the method of trial in the lower court. The appeal should be to the Court of Appeals if the trial court considered evidence not stipulated, although questions of law only are involved on the appeal. Garrett v. Garrett, 156 Tenn., 253, 300 S. W., 9; Gormany v. Ryan, 154 Tenn., 432, 289 S. W., 497; Johnson v. Stuart, 155 Tenn., 618, 299 S. W., 779; Cumberland Trust Co. v. Bart, 163 Tenn., 272, 275, 43 S. W. (2d), 379.

We will dispose of the remaining questions presented by appellants' assignments of error in the order which to us seems most convenient, without undertaking to follow the order in which they are assigned.

No error is assigned upon the aforesaid personal judgments rendered by the chancery court against appellant D. T. Hardin in favor of the Lincoln County Bank and John D. McDowell, receiver, respectively, except that appellants say that the finding and judgment of the chancellor that defendant D. T. Hardin owed the Lincoln County Bank (at the date of the decree below) $1,913.98 "is

excessive and unjust to the extent of $100.11, under complainants' proof.'' The complaint on this point, as we understand the brief, is that the alleged excessiveness in said judgment resulted from an error in the calculation of interest, which error there is no attempt to demonstrate by a calculation in the assignment of error or brief.

We do not think that it is the duty or function of this court to make such calculations in the circumstances thus presented. The Code, sections 8721, 8722, provide for the correction of clerical errors apparent on the record by the court rendering the judgment or decree, and as, in any event, this cause must be remanded to the chancery court, an apparent clerical error (if any there be) in the amount of the judgment may be corrected by that court upon the remand.

Before stating our conclusions with respect to the findings of the chancellor relating to the alleged fraudulent conveyances made by defendant D. T. Hardin, it may be well to observe that issues in the usual form of a question or series of questions for the jury to answer were not framed at any time in the court below. After the jury was impaneled, the pleadings were read, and then, before any evidence was heard, the chancellor made a statement of the issues to the jury as follows:

''So far as the court is concerned, gentlemen, thus far there are only two issues to be submitted to you. I decide the lawsuit, but you are to find the facts for the court's edification. The bill in this case seeks to set aside certain conveyances by Dr. Hardin, to his wife, as fraudulent; either as fraudulent, or made for the purpose of defeating Dr. Hardin's creditors, and he is rendered insolvent by these conveyances. This is denied by Dr. Hardin. I'm getting this so we can get the issue to you. Dr. Hardin says, with reference to the home place, that there was some mistake made in the first deed, and that thereupon this means or this method was adopted, by conveying property to his brother, and thereby conveying it back to him and his wife, so as to hold it, as was intended in the first instance, to hold as tenants by the entireties. The survivor takes, under that rule. The other conveyances, it is contended, were not voluntary conveyances, and were not made for the purpose of defeating the rights of these defendants, or any other parties' rights. I would then submit to you those two issues of fact, and if counsel can find any others that they want to submit to you, and the court can agree, we will submit those to you as the case proceeds.''

No objection was made or exception reserved by any of the parties to the aforesaid statement of the issues by the chancellor, and none of the parties tendered any issues to the chancellor for submission to the jury at any time during the trial. So far as appears, all the parties were satisfied with the aforesaid statement of the is-

sues by the chancellor, and acquiesced therein until the case had been withdrawn from the jury and the decree rendered, when appellants, for the first time asserted in their "motion for new hearing" that the court committed error in not submitting to the jury certain "issues of fact" specified in said motion; and, in this court, it is sought to predicate an assignment upon such asserted error.

■ This assignment of error (assignment number 2) is overruled. The issues stated by the chancellor to the jury were responsive to the pleadings and were material. The acquiescence of appellants in the chancellor's statement of the issues and their failure to tender other issues was a waiver of objection to the issues stated to the jury by the chancellor. Simmons v. Hart, 6 Tenn., Civ. App., 400; Madison Land & Loal Co. v. Hammond, 2 Tenn. App., 423, 430.

■ Moreover, the nine "issues of fact" which appellants say in their second assignment or error should have been submitted to the jury fall into one or the other of two classes, viz.: (1) Merely evidentiary facts not determinative of the controlling issues, and (2) issues relating to facts necessarily involved in and within the scope of the issues which the chancellor stated to the jury.

In section 549e of the 4th Edition of Gibson's Suits in Chancery, it is said:

"Reservation of Issues; What Becomes of Those Not Submitted.—It is true that a demand for a jury is a request that all the disputed determinative issues of fact be tried by the jury; this does not mean that submission of all of them is imperative. The parties may expressly agree that certain questions of fact be determined by the Chancellor; or the conduct of the parties with respect to the issues may amount to a consent that some points be reserved, as where there is a failure to tender an issue relative to a phase of the cause; or the Chancellor may deem some points so involved or so difficult of separation from the questions of law as to be incapable of separation into questions of law and of fact. For example, whether a party is guilty of laches or is estopped or has ratified a transaction. All such reserved questions are to be denied (decided) by the Chancellor after verdict returned; and this is true although their determination may require a consideration of the evidence introduced. And these conclusions of the Chancellor will be re-examined as if they had been determined according to the forms of Chancery."

Recurring now to the main questions arising on the record, it should be noted that this case was "tried in the chancery court upon oral testimony," and that such cases are expressly excluded from the statutory requirement that in cases tried on the facts in the chancery court both the chancellor and the Court of Appeals

shall "make . . . written findings of fact." Code, section 10620.

■ An assignment that the chancellor erred in withdrawing a case from the jury at the close of all the evidence presents, in legal contemplation, the same question presented by an assignment on an appeal in error in an action at law that the trial court erred in sustaining a motion for a directed verdict, which presents a question of law and not a question of fact. Ray v. Crain, 18 Tenn. App., 603, 609, 80 S. W. (2d), 113, and other cases there cited. Hence, where a petition for certiorari is filed to obtain a review of a judgment of this court in such case, the Supreme Court examines all the evidence in the record in order to ascertain whether this court reached the right conclusion upon the question of law thus presented.

■ It would extend this opinion to an unreasonable length and serve no useful purpose to review herein the testimony of the witnesses brought up in this large record. We have examined all the evidence and will now state our conclusions with respect to the further findings of the chancellor upon the ultimate, determinative facts of the case as embodied in his decree, bearing in mind that, with respect to the issues which the chancellor had formulated in his preliminary statement to the jury, the chancellor's findings cannot be affirmed if there is any material evidence to the contrary.

We concur in the chancellor's findings that the note of April 22, 1931, held by complainant, the Lincoln County Bank, and the note of October 2, 1933, held by cross-complainant, John D. McDowell, receiver, upon which notes judgments were rendered as aforesaid, were renewal notes, and did not constitute novations, but constituted acknowledgments of previously existing indebtedness which originated anterior to the conveyances of D. T. Hardin to his wife which are attacked as fraudulent and void in this case.

■ There was evidence by defendant D. T. Hardin that another debt of $190 was included in the Lincoln County Bank note, and another debt of $75 was included in the Elk National Bank note, at the time of renewals of said notes subsequent to the alleged fraudulent conveyances; but the merger in the notes of these comparatively small debts with the pre-existing debts did not prejudice the rights of the creditors of defendant D. T. Hardin to challenge the said conveyances as voluntary and fraudulent. It was so held in Trezevant v. Terrell, 96 Tenn., 528, 33 S. W., 109.

We also concur in the chancellor's finding that by deed of August 13, 1929, acknowledged for registration on January 20, 1930, and recorded on the latter date in the registrar's office of Lincoln county, Tenn., defendant D. T. Hardin gave and conveyed to his wife and codefendant, Mrs. Elzie Hardin, the real estate described in Exhibit C to the original bill in this cause (which real estate, con-

sisting of eight tracts, aggregating approximately 180 acres, and situated in what was formerly the 18th, but now the 8th, civil district of Lincoln county, Tenn., is fully described by metes and bounds in the pleadings, proof, and the chancellor's decree), and that said conveyance was voluntary, without a fair or valuable consideration, and fraudulent in both law and fact, and was executed with the intent to hinder and delay the creditors of defendant D. T. Hardin in the collection of their debts; that defendant Elzie Hardin well knew the intent and purposes of said conveyance; and that the aforesaid conveyance had the effect to render defendant D. T. Hardin insolvent; and that the other defendants were likewise insolvent, and that defendant D. T. Hardin was thereby left without sufficient means or property with which to pay his indebtedness, and especially the note sued on in this cause. Code, section 7272.

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." Code, section 7274.

It is seen that, although the chancellor held that the conveyances by means of which defendant D. T. Hardin effected the transfer of the title to the property in the town of Fayetteville (known in the record sometimes as the Fayetteville Collegiate Institute Lot, and at other times as the town property, or the home place) from his sole ownership to himself and his wife as tenants by the entireties, were voluntary, without consideration, and executed with the intent to hinder and delay complainant and cross-complainant and other creditors in the collection of their debts, he also held that at the time the lot was purchased in 1920 it was the intent of defendants Hardin and wife "to buy the lot together," but that the title had been allowed to remain in the name of defendant D. T. Hardin approximately ten years, during which time the debts sued on in this case had been created, and therefore said defendants are estopped to assert title to said property (as tenants by the entireties), except that they are entitled to homestead therein.

But the chancellor found that there was a probability that a sale of the aforesaid real estate in the old 18th district of Lincoln county would realize more than sufficient to satisfy the decrees in this cause, and that there was a mortgage indebtedness on said town property in favor of Mrs. Harriett D. Sheddan (a party to this cause) and that the exact amount of same was not shown by the proof; and he expressly reserved the adjudication of all matters regarding a sale of said town property and the manner in which homestead therein should be allotted, until after the coming in of the master's report of sale of the said property in the old 18th dis-

trict of Lincoln county. It thus appearing that, with respect to said town property in Fayetteville the chancellor did not order "an account or a sale or partition," it follows that, as to that property, it was not within the discretionary power of the chancellor to grant an appeal; hence we are without jurisdiction to review his decree in that respect. Code, section 9038.

Appellants' third assignment is that "the court committed error in overruling defendant's objection to Fred Rawls' evidence as to the bank record of the origin and various renewals of note sued on, when no copy of nor the original was exhibited to be examined, and when said evidence as to the record was contradicted by the evidence of defendant-surety Hardin, and the evidence of said Rawls as to the record of the Bank is purely hearsay. (R-36)."

It could scarcely be said that the third assignment, supra, conforms to the long published rule of this court and the Supreme Court, that "when the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found."

However, if this assignment of error could be considered as challenging an entire line of evidence, we are of the opinion that it is not well made. Fred Rawls was the cashier of the Blanche Bank (although not such until after the origin of the indebtedness now represented by the note held by cross-complainant receiver) and, after the merger of the two banks, he was cashier of the Lincoln County Bank. He testified from the books and records of said two banks to the fact of the origin of the indebtedness of defendant D. T. Hardin and the several renewals thereof. We are of the opinion that this testimony was competent and admissible for the reasons stated, and upon the numerous authorities cited on the subject of "regular entries" as an exception to the hearsay rule, in the case of Pigg v. Houston & Liggett, 8 Tenn. App., 613, 627, 628, to which we refer without restatement here.

Another assignment is that "the court committed error in admitting and considering, over defendants' objection, a digest of thirty-four real estate deals, in which defendant, D. T. Hardin, was connected in some way, and all of which are dated prior to date of alleged origin of the notes sued on, were and are incompetent for any purpose as to issues, and can only be prejudicial."

It is obivous, we think, that this assignment is too general, vague, and indefinite to constitute a good assignment of error under the published rules of this court, and it is overruled. The learned counsel for appellants did not even mention it in his brief and written argument.

Through other assignments of error appellants assert that the chancellor erred in rendering the judgments against defend-

ant D. T. Hardin, because of delay of the banks in attempting to enforce collection of the indebtedness in question until the principal, Maddox, became insolvent, but we find no basis in the record for the estoppel which appellants thus seek to invoke.

We have given full consideration to all of appellants' assignments of error, and we are of the opinion that no one of them is suspported by the record, and they are all overruled.

It results that the decree of the chancellor, so far as it is brought up for review by the appeal of D. T. Hardin and wife, is affirmed, and the cause will be remanded to the chancery court of Lincoln county for the execution of the decree under the orders and decrees of the chancellor not inconsistent with the opinion and decree of this court.

The costs of the appeal will be adjudged against appellants D. T. Hardin and Elzie Hardin, and if not sooner paid, will be paid out of the proceeds of the sale of the lands when sold.

Crownover and Felts, JJ., concur.