## HUBBELL v. HOUGHTON.

(Circuit Court, D. Massachusetts. April 26, 1898.)

### No. 667.

STOCK OF INSOLVENT NATIONAL BANK—REAL AND OSTENSIBLE OWNER—LIABILITY FOR ASSESSMENT.

Defendant acquired stock of a national bank through his agents, in whose names the shares were registered on the books of the bank, and so appeared when the bank became insolvent. Defendant had all the time held the certificates, so indorsed that he might have had the shares registered in his own name. *Held*, that the receiver can recover from defendant an assessment on said stock for the benefit of creditors, though he might have proceeded against those in whose names the shares appeared on the bank's stock register.

Charles S. Hamlin and Robert M. Morse, for plaintiff.
Benjamin E. Bates and William F. Dana, for defendant.

PUTNAM, Circuit Judge. The shares of the capital stock of the national banking association involved in this litigation were never entered on the books of the association in a way which would indicate ownership of them by the defendant. Nevertheless, when they were acquired by the parties in whose names they appeared on its books at the time it became insolvent, they were acquired by them as the agents of the defendant; and, from the time they were acquired, the substantial proprietorship had always been in the defendant, and the defendant had always held the corresponding stock certificates, so indorsed that it was in his power to have the shares properly registered in his name at any time.

Under these circumstances, it is entirely clear, and it is not denied, that the receiver might have brought actions against the individuals in whose names the stock appeared on the books of the association, for the assessment claimed in this suit, and might have recovered judgments against them for the same; and that thereupon, so far as this case shows, those individuals would have had rights of action over against the defendant for the amounts which they might have been required to pay on the judgments, and could have recovered the same from him. In other words, it is clearly the law, and it is not denied, that the ultimate result, under the circumstances shown here, would have been payment by the defendant to somebody of the assessment in suit. If, therefore, there is anything which renders necessary in this instance, in order to accomplish the ultimate result, the multiplicity of suits which the law abhors, it must be something imperative in that behalf, either in the terms of the statutes relative to national banking associations or in the technical rules as to the proper parties to actions.

It is also settled that the individuals who permitted this stock to remain registered in their names on the books of the association were estopped from denying that they were liable for this assessment; but it does not follow that the converse of the proposition is true. On the other hand, it is not inconsistent with the principles of law that, under such circumstances, the receiver had an option to avail himself of this estoppel or to recover from the person who was in substantial proprietorship of the stock, and ultimately liable for the assessment, as he might find the one or the other having the better pecuniary responsibility, or within easier reach of legal process.

It is also well settled that a receiver is not, under all circumstances, limited to a remedy against stockholders of record in a national banking association; because, when such a stockholder has transferred his shares in anticipation of the insolvency of an association, a receiver may, under some circumstances, pursue him, notwithstanding the books of the association did not exhibit his name at the time the insolvency actually occurred. The latest authoritative decision of this character is Stuart v. Hayden, 169 U. S. 1, 18 Sup. Ct. 274. Nevertheless, this line of decisions does not reach the case at bar, because it depends on the proposition that the transfer of the stock was, under the circumstances, fraudulent, and, in law, a thing done fraudulently is held as though not done.

The defendant relies on various expressions in the statutes relating to national banking associations which, by their letter, treat, for certain purposes, as stockholders only those persons who appear such of record. We need not detail these, as substantially nothing can be found in them which indicates any purpose except that common in various states to legislation of this character.

Section 5139 of the Revised Statutes provides:

"The capital stock of each association shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association."

The by-laws of the association involved in this case provide:

"The stock of this bank shall be assignable and transferable only on the books of this bank, subject to the provisions and restrictions of the banking laws, and a transfer book shall be provided in which all assignments and transfers of stock shall be made."

The certificates put in evidence contain a like restriction, but in a modified form; that is to say, they contain the words, "Transferable only on the books of the bank in person or by attorney, subject to the by-laws, by indorsement hereon, and surrender of this certificate." They are, therefore, in the usual form, so far, at least, as to contemplate the passing of the certificates from hand to hand after proper indorsements, which delivery, according to the well-established usage, conveys, as between the seller and the purchaser, the entire interest. Johnston v. Laflin, 103 U. S. 800, 804; National Bank v. Watsontown Bank, 105 U. S. 217, 221. In Johnston v. Laflin, at page 804, Mr. Justice Field, speaking in behalf of the court, says that "the transferability of shares in the national banks is not governed by different rules from those which are ordinarily applied to the transfer of shares in other corporate bodies." Several other decisions of the supreme court are to the same effect, the latest expressions being in Leyson v. Davis, 170 U. S. 36, 40, 18 Sup. Ct. 500.

Therefore, as was well said in Sibley v. Bank, 133 Mass. 515, 520, the by-law and the stock certificates do not affect the construction of the statute. They run pari passu with it, and only indicate the details of the manner in which the transfer shall be made on the books of the association, without adding to, or taking anything from, the legal effect of such a transfer, or of the absence of it.

The defendant cites several expressions of various judges delivering opinions in behalf of the supreme court, to the effect that, under the statutes, no person can be regarded a shareholder, liable to contribution, unless stock appears of record in his name, with the exceptions to which we have referred, and, perhaps, with some other exceptions which are not pertinent here. It is conceded, however, that there is no actual decision in his behalf by that court. It must, also, be conceded by the plaintiff that there is no decision in his behalf; although there are two cases which we think outweigh the various expressions favorable to the defendant, as we will hereafter explain.

The circuit court of appeals for this circuit has so fully considered the nature of expressions found in the opinions of courts which are not necessary to the disposition of the case, in King v. Asylum, 12 C. C. A. 139, 64 Fed. 331, 340, that we do not deem it of value to add anything to what is there said as to the lack of the obligatory force of dicta, even of the supreme court. What is there said is reinforced by a late opinion, with reference to this very question of the liability of the holder of shares of the stock of national banking associations, in Stuart v. Hayden, 169 U. S. 1, 7, 18 Sup. Ct. 274, already cited, and in a later case, relating to a different topic, McCormick Harvesting Mach. Co. v. C. Aultman & Co., 169 U. S. 606, 611, 18 Sup. Ct. 443.

The decisions of the English courts and of the various state courts on which the defendant relies cannot control us, except so far as they commend themselves to our judgment, and are based on circumstances of like character with those at bar. It is true, as claimed by the defendant, that by a long line of decisions in England, with the exception of a limited class as to which the courts are authorized by statute to rectify a corporation's register, no person can be regarded as a shareholder, subject to calls, unless he appears as such of record; but the subject-matter of the winding up of corporations in England constitutes a special statutory system, harmonious in the whole, and the elements of one part of which necessarily work with, and are molded by, the remaining elements. Therefore we cannot safely transfer elements from it into the system established with reference to national banking associations, which is also peculiar and wholly statutory. It is enough to say that in England no person can become a shareholder, except under special circumstances, until he has been accepted by the corporation; while, under the general rules applicable in the United States, a purchaser of stock has an unrestricted right to be admitted as a corporator.

The state decisions cited by the defendant are inapt. In Manufacturing Co. v. Smith, 2 Conn. 579, suit was brought by the corporation itself for an assessment on the shareholders, without any notice in the opinion of the court that it was in the interest of the creditors. The same was the fact in Vale Mills v. Spalding, 62 N. H. 605. In Glenn v. Garth, 133 N. Y. 18, 30 N. E. 649. and 31 N. E. 344, the party sued was not even substantially the owner of the shares, but merely a broker, who had purchased on margins for customers; that is to say, he was holding the stock as collateral. The question at bar was not presented in that case.

In like manner, the text-books ordinarily accept the general principle, working out the same result as the state decisions to which we have been referred, without carefully distinguishing the relation growing out of a contract between the corporation and the shareholder, on the one side, from a statutory liability created for the benefit of creditors, on the other. The latter relation arises in suits of the character of that at bar under the statutes relating to national banks. Bank v. Hawkins, 24 C. C. A. 444, 79 Fed. 51. But, beyond this, there is the fact, to which we have already re-

ferred, that we must determine this suit under statutes constituting a special system. Therefore, we are at liberty, without being prejudiced by the authorities referred to, to apply to the case before us the general rules of law.

Coming to the two decisions of the supreme court which seem to us to bear more directly on the question at bar than any other authorities which have been brought to our attention, we refer, first, to Anderson v. Warehouse Co., 111 U. S. 479, 4 Sup. Ct. 525. There the chief justice says, at page 483, 111 U. S., and at page 527, 4 Sup. Ct.: "It is also undoubtedly true that the beneficial owner of stock registered in the name of an irresponsible person may, in some circumstances, be liable to creditors as the real shareholder."

The connection in which this is said shows that it has no reference to the case of a transfer of stock for a fraudulent purpose. It is also difficult to see the excuse for the line of reasoning of the court if the position of the defendant at bar is correct. The suit was brought by the receiver of a national bank against the Philadelphia Warehouse Company, which was never a registered owner of the stock; and if that was a sufficient answer, as claimed by the defendant here, the court ought not to have felt holden to go into an elaborate discussion of a wholly different principle in order to relieve that corporation. However, it must be said that the precise point which we have now before us was not decided in that case, and yet it carries great weight. We shall have occasion hereafter to refer to another expression in this case in connection with Pauly v. Trust Co., 165 U. S. 606, 17 Sup. Ct. 465. There, Mr. Justice Harlan, speaking on behalf of the court, at page 619, 165 U. S., and at page 470, 17 Sup. Ct., says: "The real owner of the shares of the capital stock of a national banking association may, in every case, be treated as a shareholder, within the meaning of section 5151." This section is the provision of the Revised Statutes which imposes liability on the stockholders of such associations. It may be claimed, however, that this expression goes beyond the case. Further on, at page 623, 165 U. S., and at page 471, 17 Sup. Ct., he states that "congress did not say that those only should be regarded as shareholders, liable for the contracts, debts, and engagements of the banking association, whose names appear on the stock list distinctly as shareholders." This is literally true.

It is held in the case that a pledgee of shares of a national banking association who appears as such on the books of the association is not liable to the statutory assessment. At pages 622, 623, Id., the court meets the objection that, if the pledgee is not liable to the assessment, no one can be; and, in that connection Mr. Justice Harlan makes the statement to which we have referred, that "congress did not say that those only should be regarded as shareholders, liable for the contracts, debts, and engagements of the banking association, whose names appear on the stock list distinctly as shareholders." And also, in this connection, at page 624, 165 U. S., and at page 472, 17 Sup. Ct., he repeats what was said in Anderson v. Warehouse Co., 111 U. S. (already referred to), at page 484, and 4 Sup. Ct., at page 528, that, in cases of this character, the transferrers remain "the

owners of the stock, though registered in the name of others, and pledged as collateral security for their debt."

Now, in Anderson v. Warehouse Co., as in many other like cases, after the stock was transferred to the pledgee on the books of the bank, the name of the pledgor no longer remained of record. Yet it follows, as a necessary result, as said by Mr. Justice Harlan, that the pledgor continued liable to the assessment. Such seems to be his course of reasoning in Pauly v. Trust Co., at various points, and this appears to be so directly involved in the determination of that case as to render it of much more effect than an ordinary dictum. Looking, therefore, at the lines of reasoning and the results in Anderson v. Warehouse Co. and Pauly v. Trust Co., we think we are compelled, sitting on the circuit, to hold them as weighty authorities in favor of the plaintiff, notwithstanding the issue made here was not directly made there.

In looking at the merits of the question before us, we are urged by the defendant to determine that the relations between the registered owners of this stock and the defendant are those of trustees and cestui que trust, and that, in no event, can a cestui que trust be holden for an assessment under the statutes relating to national banks. Certainly, there is no express trust here, and we perceive no elements raising an implied trust. The registered owners of the shares had completed their duty with reference to it; they were under no obligation to see to the proper entries of the transfers on the books of the association; and the parties are, in every sense of the word, at "quits," with no existing obligations or confidential relations between them, so far as this stock is concerned. Moreover, if we were compelled to consider the proposition, we should probably hold that the statute, so far as it relates to the status of stock held in trust, concerns only express and active trusts, where there is a probability of some estate to respond to the liability, and also that it does not apply when the records of the corporation show an unincumbered title in the alleged trustee, as is the fact at bar.

We have already said that the directions in the statutes touching national banking associations, with reference to the method of transferring shares of stock and entering the transfers on the books of the corporations, are, in no substantial respect, unlike the provisions of law so common in the various states in regard to the same subject-matter. And we have also said that, under such provisions, the indorsement and delivery of the certificate are sufficient to complete a transfer of stock as between the parties to the transaction, even when it is of the nature of a sale. Nothing in these statutory provisions, so far as we can perceive, concerns the substantial rights of anybody, and all is only directory, except, of course, so far as needed to relieve the registered holder from an estoppel. So far back as Black v. Zacharie, 3 How. 483, 513, Mr. Justice Story said with reference to a similar system in the statutes of Illinois: "But this is manifestly a regulation designed for the security of the bank itself, and of third persons taking transfers of the stock without notice of any prior equitable transfer." To the same effect, but having distinct reference to national banking associations, it was said by Mr.

Justice Field, speaking in behalf of the court, in Johnston v. Laflin, 103 U. S. 800, 803, 804, already cited:

"The entry of the transaction on the books of the bank, where stock is sold, is required, not for the translation of the title, but for the protection of the parties and others dealing with the bank, and to enable it to know who are its stockholders, entitled to vote at their meetings, and receive dividends when declared. It is necessary to protect the seller against subsequent liability as a stockholder, and perhaps, also, to protect the purchaser against proceedings of the seller's creditors."

We are therefore of the opinion that the statutory provisions which require records of transfers of the shares of stock of national banking associations do not relate to matters of substance, and that they concern only convenience, and are in essence directory. While a noncompliance with them may, as we have already said, place the seller of shares at a disadvantage, yet there is nothing in them which prevents looking through the substance of the transactions when the rights of the creditors of national banking associations are involved. These observations apply to all the provisions contained in the statutes relative to national banking associations which contemplate that, for certain purposes, the holders of shares shall appear of record. Several of these have been specially relied upon by the defendant, but they are all governed by this general observation.

Having come to this conclusion with reference to instances where shares of stock have been actually sold, the case for the plaintiff seems stronger, under the circumstances at bar. Here there was no sale as between the holders of record and the defendant. They had been his agents, and, for all the purposes of this case, they were substantially the same as he; and, as against the rights of the creditors of the bank, the fact that the stock stood in their names on its books, and not in his, ought to be regarded as of the very least importance.

We limit our decision to the precise case presented to us; and we do not undertake to say what the result would be if the defendant had shown that there were equities between him and the record holders of these shares, which might justify him in rescinding the transfers of the certificates by suitable proceedings already commenced, or any other equities of equivalent effect.

Our finding is general, but we will consider any special findings which may be seasonably submitted to us by either party, the same having been first exhibited to the other. The court finds that there must be judgment for the plaintiff, with costs.