McDOWELL v. REES et al.—122 S. W. (2d) 839.

Middle Section.    June 2, 1938.

Petition for Certiorari denied by Supreme Court, December 17, 1938.

338

W. T. McCown, Jr., of Fayetteville, for appellant receiver.
J. W. Holman, of Fayetteville, for adult appellees.
Robert W. Stevens, of Fayetteville, for minor defendants.

FAW, P. J. Elk National Bank of Fayetteville was duly chartered and organized under the banking laws of the United States many years ago, with its situs and principal place of business in the town of Fayetteville, Lincoln County, Tennessee, and operated as such banking association until March 1, 1933, when it suspended business and was placed in the hands of a conservator, under whose control it remained until March 30, 1934, on which latter date the complainant John D. McDowell was, by reason of its insolvency, appointed receiver thereof by the Comptroller of the Currency of the United States, and was duly qualified as such, and since that time has, as such receiver, been in possession of the books, records and assets of said bank and administering its affairs for the purposes of said receivership, with all the rights and powers vested in such receivers of insolvent national banks by .the laws of the United States.

On July 30, 1934, the Comptroller of the Currency, pursuant to law, made an assessment and requisition upon the shareholders of said Elk National Bank for $75,000 to be paid by them on or be-

fore the 16th day of August, 1934, and made demand upon each and every one of the shareholders for the par value ($100) of each and every share of the capital stock of said Association held by them, respectively, at the time of its failure; and directed said John D. McDowell, the Receiver, to take all necessary proceedings, by suit or otherwise, to enforce to that extent the individual liability of the shareholders of said Bank Association.

On a day in January, 1923, Roy W. Rees, a resident citizen of Fayetteville, Tennessee, acquired, by transfer from trustees under the will of his father, an absolute title to thirty shares of stock in the Elk National Bank, evidenced by a certificate issued to him at that time by the Bank, and by the entry of his name on the records of the Bank as the owner of said shares. Roy W. Rees held and owned said thirty shares of stock in the manner stated, until January 7, 1926, when he delivered his said certificate for thirty shares to the Bank and, on his request, the Bank issued in lieu thereof three certificates for ten shares each, viz: one certificate to ''Roy W. Rees, Trustee for Celista Rees'' (an infant daughter of said Roy W. Rees); one certificate to ''Roy W. Rees, Trustee for John H. Rees'' (an infant son of said Roy W. Rees); and one certificate to ''Roy W. Rees.'' The ten shares evidenced by the last named certificate (to ''Roy W. Rees'') are not involved in this litigation.

The bill in this case was filed by John D. McDowell, Receiver as aforesaid, in the chancery court of Lincoln County, on February 29, 1936, and its primary purpose was to obtain a judgment against Roy W. Rees, one of the named defendants, for the par value of the aforesaid twenty shares of Elk National Bank stock which he had transferred to himself as trustee for his two minor children as aforestated, with interest thereon since August 11, 1934, and to set aside, as voluntary and fraudulent, a conveyance of described real estate, in the town of Fayetteville, to his wife, Mrs. Margaret F. Rees, and also a transfer of one hundred and three shares of stock in the Elk Cotton Mills to his two infant children, Celista Rees and John H. Rees, and to have said real estate and cotton mill stock, or a sufficiency thereof, sold for the satisfaction of the judgment sought against defendant Roy W. Rees.

Mrs. Margaret F. Rees and the said two minors, Celista Rees and John H. Rees, were made defendants to complainant's bill. The minors had no regular guardian, and a guardian ad litem was appointed, filed answer, and made defense for them.

Elk Cotton Mills and Rose Hill Cemetery (both Tennessee corporations with situs in Lincoln County) were also made defendants. The sole relief sought against Elk Cotton Mills was an injunction to restrain it from transferring on its books the aforementioned one hundred and three shares of cotton mills stock, or any part thereof. It was alleged in the bill that, according to complain-

ant's information and belief, Rose Hill Cemetery holds a lien or mortgage to secure a debt of $687.50, and interest, against the real estate conveyed by defendant Roy W. Rees to his wife as aforesaid, and, for that reason, Rose Hill Cemetery was made a party defendant.

Before the issues were finally made up, the complainant, by leave of the court, amended the prayer of his bill so as to pray, in the alternative, that, if the court should hold that defendant Roy W. Rees is not liable for the assessment on said twenty shares of Elk National Bank Stock, and should further hold that the minor defendants are the owners of said one hundred and three shares of Elk Cotton Mills stock, or are the beneficiaries of any trust estate, that so much of said cotton mills stock, or trust property as may be necessary to pay the full amount of said assessment on said twenty shares of Elk National Bank stock, with interest thereon, and the costs of the cause, be sold under the orders of the court.

The defendants, except Elk Cotton Mills, filed answers to complainant's bill; and a pro confesso was entered against Elk Cotton Mills.

We think the determinative issues may be sufficiently indicated as we proceed with their disposition, without undertaking at this time to state the contents of the pleadings.

Proof was taken and filed on behalf of the parties, respectively, and the cause was thereafter heard upon the entire record, from which the chancellor found and decreed as follows:

"I. That the defendant, Roy W. Rees, did not hold himself out as the real or true owner of said twenty shares of Elk National Bank Stock; that he is not liable individually for said assessment, because he transferred the bank stock from himself individually to himself as trustee for the minor defendants; and that the said Roy W. Rees only held said bank stock in his capacity as trustee for the benefit of the minors.

"II. That the one hundred and three shares of Elk Cotton Mills stock are not liable for said assessment as said stock is the individual and separate property of the minor defendants and does not constitute a part of the trust estate held for them by Roy W. Rees, Trustee, under the transfer of said bank stock.

"III. That the transfer of the house and lot described in the bill is and was not a voluntary or fraudulent conveyance and that the transfer of the one hundred and three shares of Elk Cotton Mills stock was not a fraudulent or voluntary conveyance.

"IV. That the trust estate created by the transfer of said bank stock would be liable for said assessment but as no other funds were ever placed in the trust estate and it consisted entirely of the twenty shares of Elk National Bank stock therefore no judgment

could be made out of said trust estate as said bank stock is now a liability instead of an asset.

"V. It is, therefore, ordered, adjudged and decreed by the Court that the bill with the amendment thereto be, and the same is, hereby dismissed and that all the costs of the cause except one-half of the fee of the Guardian ad Litem as hereinafter set out are adjudged against the complainant, John D. McDowell, Receiver and;

"VI. It appearing further from the oral testimony and statements of counsel in open court that the sum of one hundred and fifty dollars, ($150.00) is a reasonable fee for the services rendered by Robert W. Stevens, Guardian ad Litem for the minor defendants; it is, therefore, ordered and decreed that said sum of one hundred and fifty dollars, ($150.00) be paid to Robert W. Stevens, the same being in the opinion of the Court a reasonable fee, and that one-half of said amount be taxed as costs of the cause against the complainant, John D. McDowell, Receiver, etc., and the other one-half of said fee be, and the same is, hereby adjudged against the one hundred and three shares of Elk Cotton Mills stock owned by the minor defendants, Celista Rees and John H. Rees, and that a lien to secure the payment of same is hereby given the said Guardian ad Litem against the one hundred and three shares of said stock; and it is further ordered that the defendant, Elk Cotton Mills, or its agents, pay one-half of said fee to Robert W. Stevens out of the first dividends payable to said minor or their representatives."

The complainant excepted to the foregoing decree of the chancellor, and prayed, obtained and perfected an appeal to this court, and has filed assignments of error here, through which he asserts that the several findings and rulings adverse to him in the chancellor's decree were, and are, erroneous, and should be reversed. We will dispose of the material questions raised by the assignment of error in the order which seems to us most convenient without following the order of their assignment.

1. Did the chancellor err in holding that defendant Roy W. Rees is not liable individually for said assessment on the twenty shares of Elk National Bank Stock which he undertook to transfer to himself as trustee for his two minor children on January 7, 1926?

Defendant Roy W. Rees was the actual owner and holder of the twenty shares of stock in question, and said stock was standing on the books of the bank in his name as such owner, at the time he procured the issuance of new certificates therefor to himself as trustee for his infant children and had the stock-record of the bank altered accordingly. The children thus designated as cestui que trustent had no funds or property, and the transfer was purely voluntary. If he had procured the transfer of these shares of stock directly to his infant children, without the interposition

342

of a trustee, his liability for the assessment would have been clear under the rulings of this court in the recent case of McDowell v. Rambo, 21 Tenn. App. 448, 111 S. W. (2d) 892, 900, in which case certiorari was denied by the Supreme Court. We here quote pertinent excerpts from the opinion in McDowell v. Rambo, supra, as follows:

"The liability of stockholders in a national bank is based upon the federal statute, title 12 U. S. C., sec. 64, 12 U. S. C. A., sec. 64. 'As a general rule, the person in whose name the stock stands on the books of the bank is liable, but the actual owner may be held although the stock has not been registered in his name.' Forrest v. Jack, Receiver, etc., 294 U. S. 158, 162, 55 S. Ct. 370, 371, 79 L. Ed. 829, 832, 96 A. L. R. 1457, and other cases there cited.

"And for the rule that 'the real owner of the shares may be held responsible, although in fact the shares are not registered in his name,' see, also, Ohio Valley National Bank v. Hulitt, 204 U. S. 162-168, 27 S. Ct. 179, 181, 51 L. Ed. 423, 427; McCandless v. Haskins, D. C., 20 F. (2d) 688, 691.

"A minor is without legal capacity to assume the obligation of a shareholder in a national bank, and is not subject to an assessment therefor. Seabury v. Green, 294 U. S. 165, 168, 55 S. Ct. 373, 375 79 L. Ed. 834, 837, 96 A. L. R. 1463; Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658, annotated, p. 661.

" 'It is a settled rule that, where one subscribes for shares of stock in the name of an infant, he is liable personally to the corporation, or to the corporate creditors, on the subscription.' 1 Cook on Corporations (6 Ed.), p. 283, sec. 67.

"In Riley v. Bondi, 8 Cir., 64 F. (2d) 515, 517, it was held that, 'where a father in his own name and with his own funds buys stock in a national bank, intending to make a gift of the same to his infant child, and does make such gift by having new certificates issued in the name of the child, the father's liability to assessment is clear, for in such case the father is the transferor.' To same effect, see Foster v. Chase, C. C., 75 F. 797; Foster v. Wilson, C. C., 75 F. 797, 798; Shaw v. McMillan, Tex. Civ. App., 24 S. W. (2d) 536 (wherein the same rule was applied under the Texas banking laws).

"The assent of the cashier of the bank to the issuance of the certificate to a minor is not material, for 'the liability of the shareholder in a national bank is not contractual, but rests on a statutory liability which the executive officers of a national bank cannot waive. . . . The law properly imposes upon shareholders in a national bank a conditional liability as a protection and shield to depositors and general creditors. That protection cannot be removed by sales and transfers of stock to infants or other purchasers

who cannot legally contract to accept the same.' Aldrich v. Bingham, D. C., 131 F. 363, 365.''

However, it is insisted for defendant Roy W. Rees that he is not liable for the assessment on said stock by reason of a section of the National Banking Act (U. S. Rev. Stat., sec. 5152, 12 U. S. C. A., sec. 66), which provides that, ''persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name.''

We are of the opinion that the exemption from personal liability for assessments on national bank stock in favor of trustees, provided by the section just quoted, applies only to cases of active trusts, and does not extend to trustees under simple, dry, passive trusts, where the named cestui que trust is an infant without legal capacity to assume the obligation of a share holder in a national bank. 9 C. J. S., Banks and Banking, pages 1118, 1119, Sec. 591; Riley v. Bondi, 8 Cir., 64 F. (2d) 515, 520; Hubbell v. Houghton, C. C., 86 F. 547, 552.

''It is a simple or dry trust, when property is vested in one person in trust for another, and the nature of the trust, not being prescribed by the donor, is left to the construction of law. In such case the cestui que trust is entitled to the actual possession and enjoyment of the property, and to dispose of it, or to call upon the trustee to execute such conveyance of the legal estate as he directs. In short, the cestui que trust has an absolute control over the beneficial interest, together with a right to call for the legal title, and the person in whom the legal title vests is a simple or dry trustee.'' 2 Perry on Trusts (6 Ed.), sec. 520.

''A dry or simple trust is one as to which the trustee has no duties to perform, and the cestui que trust has the entire management of the estate. By force of the Statute of Uses a trust by which the cestui que trust takes the entire beneficial use and the whole management of the estate, and the trustee has no active duty to perform will not be sustained, but the whole title will pass to the cestui que trust. It is immaterial by what words a trust is created, if it imposes no active duties on the trustee, the Statute of Uses executes it immediately. So where property is transferred to one for the use of or in trust for another and nothing more is said, the legal estate joins the beneficial interest and rests in the cestui que trust.'' 26 R. C. L., p. 1173, sec. 8.

''Where there is no control, and no duty to be performed by the trustee, it becomes a simple use, which the Statute of Uses executes in the cestui que trust; and he thus unites both the legal

and beneficial estate in himself." 2 Perry on Trusts (6 Ed.), sec. 521. For illustration of this rule see Hughes v. Farmers' Saving & B. & L. Association, Tenn. Ch. App., 46 S. W. 362, 369, Neil, J.

Technically, the Statute of Uses applied only to trusts created on freehold interests in land, but modern courts execute passive trusts of personalty, either by analogy to the Statute of Uses, or on the theory that any trust without a purpose is automatically executed. In such cases, the cestui que trust is entitled to hold the trust property free from the intervention of a trustee. Bellows v. Page, 1936, 88 N. H. 283, 188 A. 12, 14 (citing 1 Bogert on Trusts and Trustees, sec. 207); Security National Bank v. Sternberger, 207 N. C. 811, 178 S. E. 595, 97 A. L. R. 720, 726.

"Three things must concur to raise a trust, sufficient words to create it, a definite subject, and a certain or ascertained object; and to these requisites must be added another, viz: *that the terms of the trust should be sufficiently declared."* (Italics ours.) Bispham's Principles of Equity (6 Ed.), sec. 63, p. 103. See, also, Security National Bank v. Sternberger, supra.

A valid trust of personal property may not only be created, but may be established and proved by mere parol declaration. It is essential, however, to the creation of a trust by parol declarations, that the expressions used should amount to a clear and explicit declaration of trust. Harris v. Union Bank, 1 Cold. 152, 154; Allen v. Withrow, 110 U. S., 119, 3 S. Ct., 517, 28 L. Ed. 90.

"The question, whether the trustees do or do not take the legal estate, depends chiefly on the fact, whether the testator has imposed upon the trustees any trust or duty, the performance of which requires that the estate should be vested in them. If so, an estate, co-extensive with the duties to be performed will vest in the trustees; *if not, the legal ownership will pass over to the beneficial devisee."* (Italics ours.) Ellis v. Fisher, 3 Sneed, 231, 234, 65 Am. Dec. 52. To same effect, see Jourolmon v. Massengill, 86 Tenn. 81, 92, 5 S. W. 719; Wilson v. Kilcannon, 4 Hayw. 182, 186; Harding v. Insurance Co., 2 Tenn. Ch. 465, 467; Whittle Springs Co. v. Johnson, 2 Tenn. Civ. App. 324, 2 Higgins 324, 334; Hughes v. Farmers' Saving & B. & L. Association, supra, 369.

The burden is upon one claiming exoneration from personal liability as a stockholder of a national bank, by reason of the fact that he holds the stock as trustee, to establish the existence of a valid trust by clear and convincing evidence. Heiden v. Cremin, 8 Cir., 66 F. (2d) 943, 91 A. L. R., 247, 255.

There is no proof that defendant Roy W. Rees made any declaration (either in writing or in parol) of the terms of the trust he was ostensibly creating when he procured the transfer of the shares in question to himself as trustee for his infant children. He does not claim that he did so, either in his pleading or in his testimony. He

merely says in his answer that he thereby undertook, in a bona fide manner, "to establish a nucleus or nest-egg for the benefit of his children, for the purpose of, in some degree, assuring and safeguarding their welfare;" and in his testimony he says that his sole object and purpose in making these transfers was to create "a nucleus and nest-egg" for the benefit of his children. But there is an entire absence of evidence of a declaration by defendant Roy W. Rees at any time of the terms of the trust which he undertook to assume. The bank continued to pass all dividends declared on said twenty shares of stock to the personal, or individual, credit of defendant Roy W. Rees, and, in the interim between January 7, 1926 and the time the bank "closed its doors" on March 1, 1933, it thus credited an aggregate of $3,030 as such dividends to his individual credit, which sums were thus mingled with his other individual funds and checked out by him as such. His testimony is that he expended the dividends "for the support of the children" in the manner disclosed by the following excerpt from his testimony:

"Int. 18: I will ask you if all of these dividends were not checked out by you on your individual check? Ans: That may be true, but at the same time it went for the benefit of my children.

"Int. 19: They were checked out—Ans. They went to the support of my children.

"Int. 20: In other words, on the twenty-eight dividends where (which) were paid by the Elk National Bank amounting to $3030.-00 on the Elk Bank Stock were deposited to your individual credit and drawn out by you on your individual check? Ans: That is true, for the support of my children.

"Int. 21: Mr. Rees, did you keep any record of how you spent this money for the support of the children? Ans: No sir, I did not figure it was necessary.

"Int. 22: You did not keep any record at all? Ans: No sir.

"Int. 23: Did you use any of this money individually for yourself? Ans: I would say that I did not, that the children cost me more than that. In other words, the children spent more, or I spent more for the children than $3,030.00.

"Int. 24: In other words, if you had to pay the grocery bill or any other expenses you checked out on that money to meet those obligations? Ans: Possibly so, part of it.

"Int. 25: You did not keep any record of how it was spent? Ans: I did not."

It is thus seen that both the bank and defendant Roy W. Rees treated the income and profits from the stock in question as property of defendant Roy W. Rees, in precisely the same manner that they would have done if the stock had continued to stand in the name of Roy W. Rees. The law imposed upon the father of the

minors the obligation to support and maintain them, and, in the absence of a clear declaration, when the alleged trust was created, that the trustee, as such, should collect and disburse the dividends on the stock, he had no lawful right to do so. In such case, if the minors had been entitled to the dividends, the collection thereof would have been the right and duty of a properly qualified guardian of the minors, and the disposition of such funds by the guardian would have been subject to the laws governing the relation of guardian and ward.

We find that there was no declaration by the trustor, defendant Roy W. Rees, of the terms upon which he, as trustee for his said two infant children, should hold the said twenty shares of Elk National Bank stock, and that, if the cestui que trustent had been legally competent to take and hold stock in a national bank, the trust would have been "automatically executed" when created, and the entire title, both legal and beneficial, would have vested in the named cestui que trustent, the minor defendants. Therefore, the effect of the attempted transfer of the twenty shares of Elk National Bank stock by defendant Roy W. Rees to himself as trustee for his two minor children, on January 7, 1926, was the same as if he had transferred the stock directly to said two children, without the intervention of a trustee; and, as held by this court in McDowell v. Rambo, supra (and in other cases cited in an annotation in 69 A. L. R., pages 664-666), a transferor of national bank stock to an infant remains liable for assessments thereon.

It may be stated that the minor defendants, in their answer (filed by their guardian ad litem), disaffirmed the transfer to them of said national bank stock. It was held in Mellott v. Love, 152 Miss. 860, 119 So. 913, 64 A. L. R. 968, that such disaffirmance of a transfer of bank stock may be made by an infant, and all parties are thereby restored to the status in which they would have been if the transfer had never been made.

But such expressed disaffirmance of a transfer of national bank stock to an infant is not necessary. In Early, Receiver, v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658, 660, wherein the receiver of a national bank sued Richardson for an assessment on shares which he had purchased and had transferred to his minor son and daughter, the court said [page 177] : "The real question is whether the intent of Richardson to buy the stock for his minor children, and the fact that by his direction the transfer was made to them upon the books of the bank and certificates issued in their names, had the effect of relieving Richardson from liability. We think not, since the transferees, being minors, were without legal capacity to assume the obligation. Upon coming of age they would have an election either to affirm or avoid the entire transaction. In the meantime, the transfer of

the stock having resulted to their disadvantage, the law will avoid it for them, thus leaving the liability of Richardson for assessments unaffected.''

Before concluding the discussion of the particular question to which this opinion has thus far been directed, it may be well to refer briefly to some cases which on superficial examination (particularly of the headnotes), seem to lend color to the idea that a transfer of national bank stock to one as trustee for a named infant, without a declaration of the terms of the trust, will create a valid, active trust, and relieve the transferor of liability for an assessment on such shares. Counsel for appellee Roy W. Rees cites and relies upon some of these cases. They are as follows: Pottorff v. Stafford, Tex. Civ. App., 81 S. W. (2d) 539; Pottorff v. Dean, 1 Cir., 77 F. (2d) 893; Fowler v. Gowing, 2 Cir., 165 F. 891; Lucas v. Coe, C. C., 86 F. 972; McNair v. Darragh, 8 Cir., 31 F. (2d) 906; Heiden v. Cremin, 8 Cir., 66 F. (2d) 943, 91 A. L. R., 247.

In Pottorff v. Stafford, supra, the court held that a trust in personalty may be created by parol, and, without stating the evidence in the opinion, found that the proof was sufficient to show the creation of a valid trust.

In Pottorff v. Dean, supra, Mrs. Dean had transferred shares of stock in a national bank to trustees named in an irrevocable written indenture of trust, to be held by said trustees for the benefit of her four minor children. The transfer was recorded on the books of the bank and certificates were issued and delivered to the trustees accordingly. The opinion proceeds upon the hypothesis that the trust was an active one.

In Fowler v. Gowing, supra, the defendant invested in national bank stock a fund realized from the sale of certain stock in a building association, which latter stock belonged to his minor children, and the national bank stock stood in defendant's name as trustee. On failure of the bank, the receiver sued the defendant ''as a stockholder of the bank.'' The court said, 165 F. 892, ''We are quite satisfied that the defendant's children, though minors, were the owners of the stock of the building association (Laws N. Y. 1887, p. 724, c. 556, sec. 18); that the defendant received the proceeds of the same as trustee for them, and was their trustee for the bank shares purchased therewith. . . . cases as to the liability for assessments of persons who transfer stock in national banks directly to minors have no application, because the exemption claimed by the defendant depends upon section 5152, Rev. St. U. S.''

In Lucas v. Coe, supra, the defendant Coe had in his possession a fund of $500 which he held in trust for his infant grandson, and which he invested by subscribing for shares of stock in a national bank, and a certificate was issued to him as trustee for said infant. The bank failed and the receiver sued the named trustee, but the

court held that, as trustee, he was exempt from liability by reason of the aforesaid section 5152 of the Revised Statutes U. S. (12 U. S. C. A., sec. 66). The court said, 86 F. 973: "In the case at bar the father of the infant had in his possession a fund of $500, which had been contributed by various relations, the defendant among the rest. The father did not own this fund; he held it in trust for his infant son. When he handed it to the defendant and requested him to invest it for the infant in the same securities in which he invested his individual property there can be no doubt that the defendant held the fund, and the shares subsequently purchased, in trust for the infant. The shares were not the defendant's shares; this is manifest. The dividends were not his; if the shares had appreciated in value the surplus would not have belonged to him. Upon what theory of right should he be held responsible for the statutory liability, it being conceded that the officers of the bank had full knowledge of all the facts? If this were an action by the cestui que trust against the trustee for the negligent or wrongful disposition of the trust fund an entirely different principle would be involved. The effort of the court in these cases should be to ascertain who is the actual owner of the shares and to hold him, releasing the apparent owner in all cases where he has done nothing to mislead or deceive the bank. In arriving at the true ownership the court is permitted to look beyond the books and papers and establish the truth by extrinsic evidence."

The case of McNair v. Darragh, supra, was heard on motion of complainant, the receiver, to strike the defendant's answer as constituting no defense. The answer alleged that the national bank stock in question had been transferred by the defendant to himself as trustee for his two minor children, with the purpose and intention of having the stock constitute an additional property of then existing trusts in favor of his said children.

In Heiden v. Cremin, supra, the court found from the proof that the father bought the national bank stock (partly with his own funds and partly with funds of his children, the cestui que trustent), for the purpose of placing it in (and as a part of) a trust estate which had been previously validly created. In the midst of the opinion, the court said, 66 F. (2d) 948: "Clearly, when section 66 declares trustees and others exempt from this stock liability, it contemplated actualities and not mere forms. There could be no 'trustees' unless they represented actual trusts. If no trust really existed, there could be no trustee who could hold as such and the facts that he designated himself as such on the certificates and on the bank stock books (even though the cestui que were set forth) and even honestly regarded himself as such could not make him such or relieve him from personal liability."

It is apparent, we think, that in each of the six cases last above

cataloged, the holding that the "trustee" was not personally liable for assessment on shares of an insolvent national bank, was predicated upon a finding that the national bank stock was the subject-matter of an active trust—either previously existing, or created by a sufficient declaration of trust at the time of the transfer to the trustee. In the latest of these cases (Heiden v. Cremin, supra), the other five cases were cited with approval, and some of them reviewed, and it is evident from the paragraph we have quoted above (from Heiden v. Cremin, supra) that the court, in that case, understood said five previous cases as we have interpreted them above. This is also indicated by the statement in the opinion that one of the "limitations upon the application of section 66" is "where there is a 'dry' trust with the trustee merely holding the legal title much as an agent or stakeholder." 66 F. (2d) 943, 946, 91 A. L. R., p. 253.

For the reasons herein stated, we are of the opinion that the learned chancellor erred in his ruling that defendant Roy W. Rees is not liable individually for the assessment on the twenty shares of national bank stock in question; and the appellant's assignments asserting error in such ruling are sustained. In view of our ruling just stated, it is not deemed necessary to state in detail certain facts (which we have not heretofore stated) upon which the appellant bases the further contention that defendant Roy W. Rees is estopped to deny that he is individually liable for the assessment on the twenty stares of stock in question.

It is, in substance, alleged in paragraph six of complainant's bill that, on June 25, 1932, defendant Roy W. Rees made a "financial statement" to Elk National Bank, in which he listed among his assets thirty shares of the capital stock of Elk National Bank, and that this included the twenty shares involved in this suit, and was a representation that he was the owner of said twenty shares, which representation estopped him to deny his liability for the assessment thereon.

That part of the answer of defendant Roy W. Rees relating to the allegations of complainant's bill last above stated is as follows:

"In reply to paragraph 6 of said bill, this defendant states it is true that this defendant, at the request of Mr. H. E. Dryden, the then President of said Elk National Bank, did sign some sort of a written statement which Mr. Dryden presented to defendant, but which this defendant did not read and the contents of which paper or statement he did not know and does not now recall the exact nature of said paper but this defendant does recall and states that when he,—having implicit confidence in Mr. H. E. Dryden, the President, and believing that Mr. Dryden would not include in said written statement any statements or figures which were not correct,—he, this defendant, just as he was on the point of signing said

paper, happened to glance up and see included in the listed items one item, to-wit: 'Thirty shares of Elk National Bank stock listed at $4000.00' in said paper and thereupon this defendant called the attention of said Dryden to the fact (and of which fact Mr. Dryden was as fully cognizant as this defendant) that this defendant did not own said thirty shares of Elk National Bank stock, whereupon Mr. Dryden replied in substance 'Go ahead and sign it, it does not make much difference anyhow,' and thereupon this defendant being assured by the said Dryden that said statement was more or less of a formality did sign the statement or paper as thus requested by Mr. Dryden, and this defendant further states that he signed said paper or statement without undertaking to and in fact without reading any of the other items in said statement, but this defendant signed said statement entirely upon the assurance given him by the said Dryden at the time, and this defendant gave the matter no further thought until, upon the filing of the bill in this cause, the matter was called to his attention.''

The undisputed testimony of defendant Roy W. Rees supports the statements of his answer above quoted, and there is no evidence that any action of the bank, to its detriment, was taken upon the faith of the inclusion of said twenty shares of stock, as a part of the assets of defendant Roy W. Rees, in said "financial statement'' of June 25, 1932; and we do not think that said financial statement would operate as an estoppel on defendant Roy W. Rees to deny liability for the assessment sued upon in this case. But this ruling is not material to the result, as we are of the opinion, for the reasons before stated, that defendant Roy W. Rees is personally and individually liable to judgment in this case for the amount of said assessment, with interest.

2. The next question which we will consider is presented by the appellant's assignment of error that the chancellor erred in holding that the conveyance by defendant Roy W. Rees to his wife and co-defendant, Margaret F. Rees, of the house and lot in the town of Fayetteville, was not "voluntary or fraudulent.''

Elk National Bank "closed its doors'' on March 1, 1933, and, by deed dated March 3, 1933, duly acknowledged for registration on March 4, 1933, and registered in the register's office of Lincoln County on March 6, 1933, defendant Roy W. Rees conveyed to his wife Margaret F. Rees certain real estate in the town of Fayetteville, which real estate is fully described in said deed and in the complainant's bill in this case. The deed recites that it is made in consideration of the sum of one dollar cash in hand paid, and for the love and affection which the grantor has and entertains for his said wife, the grantee.

It is alleged in complainant's bill that the aforesaid deed was made without consideration, and for the purpose of trying to de-

feat the payment of the assessment on said Elk National Bank stock and other just liabilities, and that it is "null, void, voluntary and fraudulent."

Defendant Margaret F. Rees did not testify as a witness in the case. Her answer to complainant's bill (omitting formal caption) is as follows:

"In answer to each and all of the allegations contained in said bill, this defendant states that she knows nothing of the matters herein alleged and complained of, save and except that she did sign some papers in connection with some transactions had at or about the time mentioned in said bill, but this defendant being inexperienced and unacquainted with business matters cannot and does not undertake to make any other or further statement in regard to the matters set forth in said bill.

"And now having fully answered this defendant prays to be hence dismissed with her reasonable costs."

In his deposition, defendant Roy W. Rees states (on his original examination) that he did not make said conveyance to his wife for the purpose of hindering, delaying or defeating the collection of the stock assessment in question, or any other debt or claim against him; but his testimony on cross-examination shows that said conveyance denuded him of all his visible assets, and left him without other property or assets which could be reached by process of law, and, in contemplation of law, rendered him insolvent. Code, sec. 7272.

On this point, we quote from the deposition of defendant Roy W. Rees as follows:

"Int. 104: Mr. Rees, three days after the bank closed you transferred your house and lot out here on Mulberry Avenue to your wife, that is true isn't it? Ans. That is true.

"Int. 105: What did she pay you for this transfer? Ans. She paid nothing.

"Int. 106: At that time, Mr. Rees, there was outstanding a note in the Elk National Bank for $3848.37 and another note payable to the bank amounting to approximately $62.00, is that true or not? Ans: That is true.

"Int. 107: In other words, you just gave this property to your wife? Ans: I felt like that was my right.

"Int. 108: You just gave it to her? Ans: Whatever the deed calls for, I don't remember what the deed said.

"Int. 109: Mr. Rees, after this transfer of your house and lot to your wife, what property did you have left in your name? Ans: None so far as the statement shows.

"Int. 110: What do you say about it? Ans: Real estate?

"Int. 111: Yes? Ans: I have no real estate.

352

"Int. 112: You have had none since that transfer, is that true? Ans: That is true.

"Int. 113. What personal property did you have left in your name after March 3rd, 1933? Ans: I had cash.

"Int. 114: Had cash? Ans: That is true.

"Int. 115: That was all your personal property consisted of was cash? Ans: Yes sir.

"Int. 116: I will ask you, Mr. Rees, if a judgment of $2000.00 had been obtained against you at that time on this bank stock if you would have had sufficient cash out of which to pay it?

"(This question objected to because hypothetical, calling for opinion of witness and speculative, and, therefore, incompetent—Holman, Attorney.)

"(Overruled and appealed to the Chancellor).

"Ans. I am able to pay it if I have to, but I don't owe it and I don't think I should pay anything I don't owe.

"Int. 117: In other words, Mr. Rees, you have no property in your name on which an execution could be levied to make a judgment, have you? Ans: So far as the statement shows, no sir.

"Int. 118: And do you say this, if you have to pay it you can pay it, but if they had to make it there would be no property upon which to levy an execution? Ans: I owe nothing.

"Int. 119: But if an execution was issued there would be nothing upon which to levy it? Ans. I don't know what the record shows, it may be true.

"Int. 120: You won't deny it? Ans: So far as the records show, yes.

"Int. 121: Mr. Rees, if a judgment was obtained in this case do you have sufficient money on hand to pay it now in the bank?

"(This question objected to because highly incompetent from the standpoint of there being no judgment yet rendered and being speculative and calling for an opinion of the witness and witness is here and now informed that if he so desires he may refuse to answer the question—Holman, Atty.)

"(Overruled and appealed to the Chancellor)

"Ans: I refuse to answer.

"Int. 122: You refuse to answer whether you have sufficient money on hand to take care of your legal obligations, if the Court so holds? Ans: I refuse to answer that.

"(This question objected to for the same reason last above assigned—Holman, Atty.)"

We think it clear that this case falls within section 7274 of the Code, which provides that, "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is in-

curred without a fair consideration." See Lincoln County Bank v. Maddox, 21 Tenn. App. 648, 114 S. W. (2d) 821, 828, 829.

Upon the facts disclosed by the record, the aforesaid conveyance by defendant Roy W. Rees to his wife was, in law, fraudulent and subject to avoidance at the suit of the complaining creditor, without regard to his "actual intent;" and the appellant's assignment through which he asserts that the chancellor erred in holding that said conveyance "was not a voluntary or fraudulent conveyance," is sustained.

3. The record shows that, on January 15, 1930, defendant Roy W. Rees transferred to his minor son, the defendant John H. Rees, 53 shares of the capital stock of Elk Cotton Mills and on the same date transferred 50 shares to his minor daughter, defendant Celista Rees; and certificates were issued to the two minors accordingly —one to "John H. Rees" for fifty-three shares, and one to "Celista Rees" for fifty shares.

The Elk Cotton Mills (a Tennessee corporation) was, at the time of said stock transfers, and at the time the proof was taken in this case, a going concern, operating a cotton mill in or near Fayetteville, Tennessee.

Complainant alleged in his bill that "said transfers—or attempted transfers of said shares of capital stock of the defendant Elk Cotton Mills were without consideration, voluntary, fraudulent and void," and prayed that said one hundred and three shares of stock, or so much thereof as may be necessary, be sold for the satisfaction of the assessment on said Elk National Bank stock.

With reference to said Elk Cotton Mills stock, defendant Roy W. Rees in his answer says, "the said John H. Rees is still the owner of said fifty-three shares of Elk Cotton Mill stock and the said Celista Rees is still the owner of said fifty shares of said Elk Cotton Mill stock, and this defendant further states that at the time he made these transfers of said Elk Cotton Mill stock to his said son and daughter the transfers were made in absolute good faith and without any knowledge, notice or intimation that said Elk National Bank was either insolvent or in any way threatened by insolvency, but on the other hand said bank was at the time regarded as being a strong financial institution and in which the banking public and patrons in general had absolute faith and confidence."

The chancellor found and decreed that "the transfer of the one hundred and three shares of Elk Cotton Mills stock was not a fraudulent or voluntary conveyance;" and the only assignment of error in this court referring to said Elk Cotton Mills stock is that, "the court erred in holding that the one hundred and three shares of Elk Cotton Mills stock belonging to the minor defendants were not liable for said bank stock assessment." It is doubtful whether

this assignment of error is sufficient to challenge the ruling of the chancellor last above quoted; but if it be treated as sufficient for that purpose, we think it must be overruled.

When defendant Roy W. Rees transferred the Elk Cotton Mills stock to his infant children on January 15, 1930, he was solvent and had other visible assets sufficient to satisfy an assessment on said twenty shares of Elk National Bank stock. There was, at that time, no reason to believe that said Elk National Bank stock would become a liability, and, according to the undisputed testimony of defendant Roy W. Rees, he then had no thought or suspicion that the bank was threatened with insolvency, which did not develop until the lapse of more than three years thereafter.

By their answers (through their guardian ad litem) in this case, the minor defendants asserted that they are the owners of the said Elk Cotton Mills stock by virtue of the aforesaid transfers to them on January 15, 1930. They deny that said transfers of Elk Cotton Mills stock to them were fraudulent or void, or that they rendered defendant Roy W. Rees insolvent, or left him without sufficient assets to meet his obligations. They state that said transfers of stock were made to them over three years before the Elk National Bank closed its doors, and before Roy W. Rees knew or suspected, or could have done so, that said Bank was in failing condition. That the transfers of said one hundred and three shares of stock did not render the said Roy W. Rees insolvent, as he was left with more than enough property subject to execution to satisfy all his debts, and enough to have paid Complainants' claim after said transfers, as may be seen from the bill itself, and if he is now insolvent it is because of later transactions or conveyances.

An infant may acquire and own shares of stock in a Tennessee corporation. Smith v. Railroad, 91 Tenn. 221, 239, 18 S. W. 546.

"An infant is capable of being a donee of property. In the case of a gift to an infant no formal acceptance is necessary, but if the gift is for his advantage the law will presume acceptance; the law accepts it for him, and will hold the donor bound, while if the gift is not for the infant's advantage the law will repudiate it at his instance, even though he may have in terms accepted it." 31 C. J., p. 1024, sec. 78.

The record tends to show that the Elk Cotton Mills stock here in question is valuable property, and there is no evidence to the contrary.

We find no basis in the record for a decree subjecting said one hundred and three shares of Elk Cotton Mills stock belonging to the minor defendants to the satisfaction of the assessment on said Elk National Bank stock; and appellant's assignment of error through which he asserts such liability is overruled.

4. The remaining questions raised by the appellant's assignments of error relate to the adjudication of costs. It is seen from the decree, hereinbefore copied, that the chancellor adjudged the costs of the cause, except one-half of the fee of $150 allowed the guardian ad litem of the minor defendants, against the complainant receiver.

We have no doubt that, in adjudging the costs against the complainant receiver, the learned chancellor was merely applying the general rule that "costs follow the result of the suit," a rule that "is seldom departed from, except when it would be inequitable to follow it." Gibson's Suits in Chancery (4 Ed.), sec. 582.

"The general rule on the subject of costs, adopted in the court of chancery, is the same as in a court of law, that the costs follow the result of the suit; but the former court may under certain circumstances excuse the unsuccessful party from the payment of costs to his opponent, and even in exceptional cases actually throw his own costs upon the party succeeding. Cases of the latter class, however, are very limited, and seem to be confined to cases where the unsuccessful party is in no fault whatever." Raht v. Mining Co., 5 Lea 1, 79.

The discretion exercised by the chancellor in the taxation of costs is "a legal discretion, and if not properly exercised," the appellate court will give such direction as to costs as it deems proper, "when the whole case is brought before us by appeal to be tried de novo." Snapp v. Purcell, 13 Lea 693, 694.

In the view we have taken of the merits of this case, as hereinbefore stated, no reason appears for adjudging costs against the successful party (the complainant receiver), and the appellant's assignments of error through which he complains of the adjudication of costs are sustained, and the costs adjudged against the complainant below will be adjudged against the defendant Roy W. Rees.

5. It results that, in the respects herein pointed out as erroneous, the decree of the chancery court is reversed, and a decree will be entered granting to the complainant a judgment against defendant Roy W. Rees for $2,000, and interest thereon from August 11, 1934, and declaring the aforesaid conveyance of the real estate in the town of Fayetteville, described in complainant's bill and exhibit B thereto, fraudulent and void as against complainant McDowell, Receiver, etc., and ordering same sold (subject to the mortgage debt held by Rose Hill Cemetery) for the satisfaction of the aforesaid judgment as prayed for in complainant's bill, unless said judgment and all costs adjudged against defendant Roy W. Rees are paid and satisfied within a reasonable time to be fixed by the chancellor on the remand.

The costs of the cause accrued in the court below, including one-

half of the fee of the guardian ad litem, and the costs of the appeal, will be adjudged against defendant Roy W. Rees.

The cause will be remanded to the chancery court of Lincoln County for the entry of a decree in accordance with the opinion and decree of this court, and for the execution thereof under the orders and decrees of that court.

Crownover and Felts, JJ., concur.